UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

KATHARINA ROELCKE,

                                        Plaintiff,

          -against-

ZIP AVIATION, LLC
MANHATTAN HELICOPTER SERVICES LLC,
and ITAI SHOSHANI, individually

                                        Defendants.

---------------------------------------------------------------------X

Civil Case No:

Plaintiff Demands a
Trial by Jury

**COMPLAINT**

Plaintiff, KATHARINA ROELCKE, by her attorneys, DEREK SMITH LAW GROUP PLLC,

hereby complains of Defendants upon information and belief as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to TITLE VII of the Civil Rights Act of 1964 as amended, 42

   U.S.C § 2000e et. Seq. ("Title VII") and to remedy violations of the Administrative Code of

   the City of New York and the laws of the State of New York, based upon the supplemental

   jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367

   seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has

   suffered as a result of, *inter alia*, sex/gender discrimination, sexual assault, sexual

   harassment, retaliation and constructive discharge by Defendants.

## JURISDICTION AND VENUE

2.  Jurisdiction of this action is conferred upon the Court as this action involves Diversity of Citizenship under 28 U.S.C. §1332. Plaintiff is a citizen of the State of Florida and Defendant is a domestic limited liability company doing business in the State of New York with its principal place of business in the State of New York.

3.  The matter in controversy exceeds $75,000.

4.  Plaintiff also alleges violation of Federal Law, namely, the FLSA as set forth herein.

5.  Venue is proper in that the events occurred in New York City within the Southern District.

## PARTIES

6.  Plaintiff KATHARINA ROELCKE (hereinafter also referred to as Plaintiff) is an individual woman who is a resident of the County of Dade, State of Florida.

7.  At all times material, Defendant ZIP AVIATION, LLC is a domestic limited liability company doing business in the State of New York.

8.  At all times material, Defendant ZIP AVIATION, LLC operates a New York City helicopter tour and charter company located at 6 East River Piers, New York, New York 10004.

9.  At all times material, Defendant ITAI SHOSHANI (hereinafter also referred to as Defendant and "SHOSHANI" was the president and owner of Defendant ZIP AVIATION, LLC.

10. At all times material, Plaintiff was an employee of Defendant ZIP AVIATION, LLC.

## MATERIAL FACTS

11. In or around June 2007, Plaintiff met Defendant SHOSHANI when she was greeted by a Zip Aviation pilot at the West 30th Street Heliport. The pilot conveyed to Plaintiff that Defendant SHOSHANI wanted to meet with Plaintiff and "not to leave".  When Defendant SHOSHANI arrived at the heliport, Plaintiff and Defendant sat and talked. There, they began to discuss plans for Plaintiff to begin working for Defendant and ZIP AVIATION, LLC as soon as possible.

12. Several months went by while Defendant SHOSHANI kept in touch with Plaintiff.

13. Plaintiff continuously conveyed that she wanted a starting salary of 150k annually as a manager for Defendants. Defendant SHOSHANI agreed to the salary and also offered to assist Plaintiff with her citizenship status, as Plaintiff made it known that she was a Canadian citizen.

14. In or around October 2007, Defendant SHOSHANI asked Plaintiff to meet at a hotel in White Plains to discuss business.

15. The following morning, Defendant instructed Plaintiff to meet Defendant at the heliport to start her employment with Defendants.

16. Defendant SHOSHANI did not spend any time helping Plaintiff get acclimated with her new position so it was difficult for Plaintiff to grasp her job duties without any direction from Defendant SHOSHANI.

17. After about a week of wandering aimlessly at Defendant ZIP AVIATION, Plaintiff returned to Canada.

18. Plaintiff texted Defendant SHOSHANI and told him that it was impossible for her to work without any tools or input from Defendant.

19. Defendant told Plaintiff that it was just his way of letting Plaintiff settle in.

20. Over the course of a couple weeks, Defendant SHOSHANI insisted that Plaintiff return to once again and commence her employment with Defendants.

21. In November 2007, Plaintiff returned to New York City and her employment at Defendant ZIP AVIATION again with the understanding that her salary would be $150,000 per year.

22. Defendant SHOSHANI apologized to Plaintiff for not giving her the appropriate tools needed to conduct her duties. Again, Plaintiff mentioned that she would need to be paid weekly, along with needing a phone, gas card, and a toll pass.

23. Plaintiff also asked if Defendant SHOSHANI had figured out how to make Plaintiff a citizen as promised. Defendant said he was "looking into it."

24. During the first few weeks of employment, Plaintiff focused on investigating the other successful helicopter companies in NYC. Plaintiff then began to put a plan into place to mirror these successful companies.

25. In or around December 2007, Defendant invited Plaintiff out for drinks.

26. Defendant SHOSHANI escorted Plaintiff to his private social club "The Soho House" for a drink, and after several moments there, Defendant SHOSHANI kissed Plaintiff, which eventually led to both Plaintiff and Defendant being escorted out of the club for Defendant being overly physical.

27. After being escorted out of the club, Plaintiff drove to her hotel in White Plains. Defendant followed Plaintiff there. This occasion marked a precedent. Defendant SHOSHANI had a key made for himself to enter Plaintiff's hotel room and start most of his mornings off daily

by forcing sex on Plaintiff.

28. Defendant began to pressure Plaintiff to have sex with him as part of her job and Plaintiff

    agreed.

29. In or around December 2007, Plaintiff returned to Canada for the holidays. Defendant

    insisted that Plaintiff return for the New Year.

30. On or around December 31, 2007 Plaintiff arrived back in New York. Soon after, Defendant

    SHOSHANI met Plaintiff at her hotel room where Defendant SHOSHANI forced rough and

    unusual sex on Plaintiff that Plaintiff felt compelled to play along with to keep her job.

31. In or around January 2008, Plaintiff was still not being paid or compensated for her services

    at Defendant ZIP AVIATION. Defendant SHOSHANI would lead Plaintiff on by telling

    her, "The keys to the kingdom are on their way."

32. In or around January 2008, Defendant SHOSHANI had Plaintiff move into a corporate

    apartment where Defendant began spending a lot of personal time with Plaintiff.

33. In or around late spring of 2008, while Plaintiff was sitting in the office with a client, a

    woman with and two children entered the office calling out "Daddy." Defendant

    SHOSHANI did not disclose that he was married. Plaintiff never considered Defendant to

    be married given the amount of time Defendant SHOSHANI spent with her.

34. On a daily basis, Defendant SHOSHANI would tell Plaintiff how much he "loved her."

35. Frequently, Plaintiff asked Defendant SHOSHANI when she was going to be paid for her

    services. Defendants never paid Plaintiff her agreed upon salary, or anything for that matter.

    Defendants would always stall Plaintiff and never paid her.

36. Plaintiff, believing she would eventually be compensated as promised went back to building

    and operating Defendants' company.

37. In or around mid-January, 2008 Plaintiff had been approached by a headhunter for Agusta Westland, a helicopter manufacturing company in Philadelphia to head up a new department.  Defendant SHOSHANI was not pleased. After much persuasion and promises from Defendant, Plaintiff declined the offer. Defendant SHOSHANI then promised Plaintiff shares of stock/ownership in Defendant ZIP AVIATION, LLC.

38. Plaintiff began finding advertising avenues to promote the company.

39. In or around 2008, Plaintiff had a very busy summer operating Defendants' growing company.

40. Plaintiff was now bombarded by a daily invasion of calls from the call center Defendant SHOSHANI had hired to filter the new set of passengers that came from Plaintiff's efforts. Plaintiff was also managing the flights and the accounting of a side business Defendant SHOSHANI acquired. Plaintiff started to make schedules for the pilots and new staff as requested by Defendant SHOSHANI. Plaintiff was also doing payroll for other staff members, interviewing and new hiring staff while creating new positions and duties.

41. Unbelievably, Plaintiff was still not being paid or compensated for her employment with Defendants and had still not received a paycheck or the stock/ownership Defendants had promised her.

42. In mid- February, 2009, Defendant SHOSHANI went away with his family to Miami leaving Plaintiff to run the operation by herself.

43. On one particular night, Defendant SHOSHANI sent Plaintiff a Facebook message telling Plaintiff "You are the only one for me. Can't you see how hard I'm trying and just how much I love you."

44. Defendant SHOSHANI promised "I'll never let you down." Plaintiff was struggling to hold

it all together for Defendant. Plaintiff began focusing on building the best business possible believing Defendant SHOSHANI's words.

45. Shortly after his return from Miami, Defendant SHOSHANI went away to Israel with his family.

46. Again, Plaintiff was left to take care of the business.

47. In or around mid - 2009, Plaintiff had still not been compensated for almost two years of work and dedication with Defendants.

48. The night Defendant SHOSHANI returned from Israel, he went from dropping off his family at home to coming to the apartment where Plaintiff was sleeping, making his way into the apartment, in Plaintiff's bed where he forced non-consensual sex on Plaintiff.

49. On one occasion, Defendant SHOSHANI decided he wanted harsh, kinky sex. Plaintiff refused. Defendant disregarded this refusal and forced sex on Plaintiff. These encounters would take place often throughout Plaintiff's professional relationship with Defendant. Plaintiff would learn to mentally and physically block out the pain.

50. In or around May, 2009, Plaintiff revamped Defendant ZIP AVIATION website to add all the new tours and charter services that had expanded.

51. Still, Plaintiff was not being paid.

52. Once again, Plaintiff insisted that she needed money to pay her bills.

53. Defendant SHOSHANI would give Plaintiff cash out of his pocket to take care of the shopping and supplies that were required for the business. Plaintiff was given permission to use what was left over for her personal use, providing Plaintiff supply Defendant SHOSHANI with receipts.

54. Most times, the money that was left over wasn't enough for Plaintiff to eat, let alone pay her

bills. Plaintiff was forced to sleep on an air mattress on the floor. All the while, Defendant SHOSHANI would still come to Plaintiff's apartment and forcefully have sex with Plaintiff.

55. Defendant SHOSHANI was using Plaintiff as he own sex slave.

56. At one point, Plaintiff approached Defendant and told him she had gone beyond proving her loyalty to the company and had not been given any monetary compensation. Plaintiff complained to Defendants that he treated her like a "slave" and a "whore." Plaintiff told Defendant that she was leaving and would not be returning.

57. Once again, Defendant SHOSHANI begged Plaintiff to stay and swore he would fix everything in time and never let Plaintiff down again and that she would be paid and he would work on her citizenship.

58. In or around 2009, Plaintiff continued working hard with redesigning the 2009 tours and wording for the new tour hosts, the FAA and Defendants' own site. Plaintiff also designed a computer program for the customer service to keep track of incoming tours via the network.

59. Needing a break, Plaintiff returned home to Canada for the holidays. Plaintiff notified Defendant SHOSHANI that she would not be returning to New York because Plaintiff could see that she would never be paid fairly for her work and dedication.

60. Defendant SHOSHANI told Plaintiff to return to New York.  During this time, Defendant SHOSHANI was having issues with his marriage. Defendant SHOSHANI, without consent, moved in with Plaintiff again while promising Plaintiff her salary, back pay as well as shares in the company and her citizenship.

61. Defendant was now being especially sexually harsh, forcing anal sex on Plaintiff. Defendant SHOSHANI thrived off causing Plaintiff physical pain.

62. Plaintiff began having panic attacks routinely not knowing what to expect when Defendant

came home. Plaintiff reached out to Defendant SHOSHANI by email begging for Defendant to stop to physically hurting Plaintiff during sex. These sessions were becoming more intense. Plaintiff felt like she was fighting for her life. Defendant SHOSHANI had a clear intent to hurt and harm Plaintiff.

63. Defendant SHOSHANI would leave visible bruises on Plaintiff after sex. Plaintiff was petrified of Defendant.

64. Defendant SHOSHANI also made Plaintiff aware that he carried a gun all day, every day.

65. Defendant SHOSHANI began saying to Plaintiff phrases such as:

- You're out of your mind.
- You are insane.
- What are you talking about?
- You are out of control.
- Seek help.
- You don't know what you are talking about.

66. Plaintiff found it impossible to demand to be paid by Defendant SHOSHANI. If Plaintiff did this, Defendant would punish Plaintiff by not feeding her and becoming more controlling. At one point, Defendant refused Plaintiff toothpaste and deodorant.

67. One night, Plaintiff woke up to find Defendant SHOSHANI on his phone scanning naked pictures of women. Plaintiff was so disgusted with all Defendant's lies and promises that she left and went to Florida.

68. Defendant SHOSHANI located Plaintiff in Florida and promised that he would make Plaintiff his priority by finding out about Plaintiff's citizenship papers where and paying Plaintiff for her work, all that he owed her.

69. Everything Plaintiff did had to meet with his approval or be punished. There was no visa and definitely no money or compensation of any kind. Plaintiff was slowly realizing that she was nothing more than Defendant's slave while he used work, pay and citizenship as carrots at the end of a stick she would never get. Since the day Defendant moved in with Plaintiff, her duties were to wash Defendant's clothes, scrub the toilets, clean the house, rub Defendant's sore feet and be at Defendant's beck and call sexually.

70. Plaintiff lived in fear every single day. Defendant always knew where Plaintiff was, never knowing why or how back then. Plaintiff had severe panic attacks.

71. Not only did Defendant SHOSHANI sodomize Plaintiff in the middle of the night while sound asleep, now Defendant SHOSHANI began to sexually rape Plaintiff in the middle of the night, wrapping his hand around Plaintiff's throat.

72. On a constant basis, Defendant would make Plaintiff empty promises.

73. Plaintiff was constructively terminated.

74. Plaintiff summoned the courage to finally rid herself of Defendants and finally left in early January, 2015.

## AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76. Executive Law Section Executive Law § 296 provides that "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability,

predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment"

77. Defendants violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her sex, together with sexual harassment and retaliation.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
## <u>AIDING AND ABETTING</u>

78. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

79. New York State Executive Law $296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so".

80. Defendants violated the section cited herein as set forth.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
## <u>RETALIATION</u>

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

82. New York State Executive Law $296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article".

83. Defendants violated the section cited herein as set forth.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

85. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice:  "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

86. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of Plaintiff's gender and sexual harassment.

87. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

90. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

91. Plaintiffs repeats and realleges each and every allegation made in the above paragraphs of this complaint.

92. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice:

93. "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

94. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

95. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

96. Section 8-107(19), entitled Interference with protected rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

97. Defendants violated the above section as set forth herein.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this

section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

100.   Defendants violated the above section as set forth herein.

## AS A NINTH CAUSE OF ACTION
## ASSAULT & BATTERY

101.   Plaintiff repeats and realleges each and every allegation made in this complaint as if they were set forth herein fully at length.

102.   The aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendant SHOSHANI did suddenly and without provocation,  did physically assault and batter Plaintiff, herein causing Plaintiff to sustain damages; in that Defendant SHOSHANI did conduct himself in a wanton, willful, reckless and heedless manner without regard to the safety of the Plaintiff herein; in that said Defendant was physically abusive; in behaving in a disorderly manner; in using

unnecessary, excessive and unlawful touching against the plaintiff; in willfully and maliciously assaulting and battering the Plaintiff herein.

103.  As a result of Defendants' acts of assault and battery, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A TENTH CAUSE OF ACTION
### BREACH OF CONTRACT

104.  All above paragraphs are repeated herein as if set forth fully at length.

105.  Defendants agreed Plaintiff would receive a salary and shares of stock.

106.  Defendant has failed to complete or fully perform its obligations.

107.  By reason of the foregoing, Defendant breached the subject contract with Plaintiff.

108.  By reason of the foregoing, Plaintiff has been damaged an amount to be determined at trial.

## AS AN ELEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
### QUANTUM MERUIT

109.  All above paragraphs are repeated herein as if set forth fully at length.

110.  Valuable services were rendered by Plaintiff.

111.  The services were rendered to Defendants

112.  The services were accepted, used, and enjoyed by Defendants.

113.  Defendant was aware that Plaintiff, in performing the services, expected to be paid by Defendants.

## AS A TWELFTH CAUSE OF ACTION
## <u>UNJUST ENRICHMENT</u>

114. All above paragraphs are repeated herein as if set forth fully at length.

115. Plaintiff has expended numerous hours and monies in performing the above work for Defendants.

116. As a result of the above, Defendants has received an enrichment.

117. As a result of the above, Plaintiff has suffered an impoverishment.

118. There exists a connection between the enrichment and the impoverishment.

119. There is an absence of a justification for the enrichment and impoverishment.

120. Plaintiff pleads in the alternative that in the event there is no other remedy under law, Plaintiff is entitled to recovery under the doctrine of unjust enrichment.

## AS A THIRTEENTH CAUSE OF ACTION
## <u>PROMISSORY ESTOPPEL</u>

121. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

122. Plaintiff relied on the Defendants' above promises by remaining with Defendants, expending various sums of money and time, and forgoing other business opportunities elsewhere, to the Plaintiff's detriment.

123. Defendants continuously assured Plaintiff that they had an agreement.

124. Plaintiff met with various clients and conducted due diligence on various deals that Plaintiff and Defendants were working on.

125.  Indeed, to date, Defendants has refused to discuss the matter any further with Plaintiff and has refused to pay Plaintiff what she is owed.

126.  Defendants acted in bad faith in eliminating Plaintiff from ZIP AVIATION and what they were working on together and then keeping all of the moneys earned for himself.

127.  Defendants are in breach of the above agreements.

128.  Despite repeated demands, Defendants has refused to make any payments to Plaintiff.

129.  As a result of the above, Plaintiff has been damaged in an amount to be determined at trial in excess of the jurisdictional limits of all lower courts.

## AS A FOURTEENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

130.  Plaintiff repeats and realleges each and every allegation made in the complaint as if they were set forth herein fully at length.

131.  Defendants' behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

132.  Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

133.  Defendants caused Plaintiff to fear for Plaintiff's own safety.

134.  Defendants' breach of their duties to Plaintiff caused Plaintiff to suffer numerous injuries as set forth herein.

135.  As a result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A FIFTEENTH CAUSE OF ACTION UNDER STATE LAW § 213-C
## BY VICTIM OF CONDUCT CONSTITUTING CERTAIN SEXUAL OFFENSES
## <u>AGGRAVATED SEXUAL ABUSE IN THE FIRST DEGREE</u>

136.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

137.  § 130.35 of the New York State Penal Law provides as follows: Rape in the first degree 1

A person is guilty of rape in the first degree when he or she engages in sexual intercourse

with another person: 1. By forcible compulsion; or 2. Who is incapable of consent by reason

of being physically helpless; or 3. Who is less than eleven years old; or 4. Who is less than

thirteen years old and the actor is eighteen years old or more. NY CLS Penal § 130.35

138.  § 130.50 of the New York State Penal Law provides as follows: Criminal sexual act in

the first degree 1 A person is guilty of criminal sexual act in the first degree when he or she

engages in oral sexual conduct or anal sexual conduct with another person: 1. By forcible

compulsion; or 2. Who is incapable of consent by reason of being physically helpless; or 3.

Who is less than eleven yeas old; or 4. Who is less than thirteen years old and the actor is

eighteen years old or more. NY CLS Penal § 130.50.

139.  Section 130.70 of the New York State Penal Law; "Aggravated sexual abuse in the first

degree" provides that "A person is guilty of aggravated sexual abuse in the first degree when

he inserts a foreign object in the vagina, urethra, penis or rectum of another person causing

physical injury to such person:

140.  Defendant SHOSHANI violated the herein sections as set forth herein.

141.  § 213-c of the Civil Practice Law and Rules provides as follows: Action by victim of

conduct constituting certain sexual offenses: Notwithstanding any other limitation set forth

in this article, a civil claim or cause of action to recover from a defendant as hereinafter

defined, for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law may be brought within five years. As used in this section, the term "defendant" shall mean only a person who commits the acts described in this section or who, in a criminal proceeding, could be charged with criminal liability for the commission of such acts pursuant to section 20.00 of the penal law and shall not apply to any related civil claim or cause of action arising from such acts. Nothing in this section shall be construed to require that a criminal charge be brought or a criminal conviction be obtained as a condition of bringing a civil cause of action or receiving a civil judgment pursuant to this section or be construed to require that any of the rules governing a criminal proceeding be applicable to any such civil action. NY CLS CPLR § 213-c

142.  Defendant SHOSHANI is civilly liable under § 213-c for violating all of the above Sections of the New York State Penal Law as described above.

143.  Defendants violated the above law as set forth herein.


## AS A SIXTEENTH CAUSE OF ACTION
## GENDER MOTIOVATED VIOLENCE PROTECTION ACT

144.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

145.  N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony

against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

146. N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

147. N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

148. Defendant's conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

149. As a result of defendant's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A SEVENTEENTH CAUSE OF ACTION
## <u>UNDER THE FAIR LABOR STANDARDS ACT</u>

150.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

151.  Defendants willfully employed Plaintiff in the afore-mentioned enterprise for work weeks and failed to compensate Plaintiff for her employment.

152.  Defendants failed to pay wages to Plaintiff as required by the FLSA, 29 U.S.C. §201 et seq. and its implementing regulations.

153.  At all times material, Defendants, did and continue to do substantial business in New York County, New York, and engage in commerce within the meaning of the FLSA.

154.  Plaintiff was an employee of Defendants who at the time of employment were engaged in commerce or in the productions of goods for commerce as covered under the FLSA.

155.  Defendants are an enterprise engaged in commerce and/or have annual gross volume of sales made or business done in excess of $500,000 as per the FLSA and 29 U.S.C. Section 203(s)(1)(A)(ii).

156.  29 USCS § 206 states as follows in relevant part: § 206. Minimum wage (a) Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

   (1)  except   as   otherwise   provided   in   this   section,   not   less   than--
        (C) $ 7.25 an hour, beginning 24 months after [May 25, 2007];

157.  Defendants failed to pay Plaintiff the required federally mandated $7.25 per hour.

158.   Defendants' failure to comply with the FLSA caused Plaintiff to suffer loss of wages and other damages.

## AS AN EIGHTEENTH CAUSE OF ACTION
## VIOLATION OF NEW YORK WAGE AND HOUR LAW
## MINIMUM WAGE

159.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

160.   Plaintiff was an employee of Defendants within the meaning of New York Wage Regulations.

161.   New York Labor Law states in relevant part as follows; § 652.  Minimum wage

   1. Statutory. Every employer shall pay to each of its employees for each hour worked a wage                            of                            not                            less                            than: $ 7.15 on and after January 1, 2007.

162.   New York Labor Law § 663 states in relevant part as follows: Civil action

   1. By employee. If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she [fig 1] *shall* recover in a civil action the amount of any such underpayments, together with costs [fig 2] *all* reasonable attorney's fees [fig 3] , *prejudgment interest as required under the civil practice law and rules,* and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to [fig 4] *one hundred* percent of the total of such underpayments found to be due [fig 5] . *Any* agreement between the employee, and the employer to work for less than such wage shall be no defense to such action.

163.   Defendants violated Plaintiff's rights to a minimum wage.

164.   On account of such violations, Defendants are liable to Plaintiff for actual, statutory and liquidated damages.


**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to be determined at the time of trial in excess of the jurisdiction of all lower courts, plus interest , attorneys' fees, costs, and disbursements of action;  as well as having a receiver appointed and conduct a full accounting of Defendants' finances, and for such other relief as the Court deems just and proper.


Dated: August 5, 2015
       New York, New York

                                        DEREK T. SMITH, ESQ.
                                        DEREK SMITH LAW GROUP, PLLC
                                        Attorney for Plaintiffs
                                        30 Broad Street, 35th Floor
                                        New York, NY 10004
                                        (212) 587-0760