UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X
KATHARINA ROELCKE,

                        Plaintiff,

                                          15 Civ. 6284 (DAB)
                                          **MEMORANDUM & ORDER**

          v.

ZIP AVIATION, LCC, et al.,

                        Defendants.
--------------------------------------------X
DEBORAH A. BATTS, United States District Judge.

    Plaintiff Katharina Roelcke filed suit against Zip
Aviation, LLC ("Zip"), Manhattan Helicopters LLC ("Manhattan
Helicopters"), and Itai Shoshani for discrimination on the basis
of sex discrimination under the New York State Human Rights Law
("NYSHRL") (Count 1) and New York City Human Rights Law
("NYCHRL") (Count 4), retaliation under NYSHRL (Count 3) and
NYCHRL (5), interference with protected rights under NYCHRL
(Count 7), employer liability for discriminatory conduct under
NYCHRL (Count 8), breach of contract (Count 10), quantum meruit
(Count 11), unjust enrichment (Count 12), promissory estoppel
(Count 13), intentional infliction of emotional distress (Count
14), violation of the Fair Labor Standards Act ("FLSA") (Count
17) and the New York Wage and Hour Law (Count 18), and fraud and
misrepresentation (Count 19). She also brings claims against
Shosani individually for aiding and abetting sex discrimination

under both the NYSHRL (Count 2) and NYCHRL (Count 6), assault and battery (Count 9), sexual abuse and/or rape (Count 15), and violation of the Gender Motivated Violence Protection Act (Count 16). The suit arises from intertwining and allegedly abusive employment and personal relationships between Plaintiff and Shoshani, the owner of both Zip and Manhattan Helicopters.

Plaintiff amended her Complaint twice, and Defendants moved to dismiss the now-operative Second Amended Complaint ("SAC") on February 1, 2016. Plaintiff opposed. For the following reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

I.   BACKGROUND

Zip Aviation, LLC and Manhattan Helicopters LLC are New York-based helicopter tour and charter companies. (SAC ¶¶ 8, 12.) The two companies are interconnected. (Id. ¶ 198.) Shoshani is the president and owner of Zip (id. ¶ 9) and the chief operating officer, chief pilot, and owner of Manhattan Helicopters. (Id. ¶¶ 12-13.)

Plaintiff began working as the vice president of operations for Zip in October 2007 with a salary of $150,000. (Id. ¶¶ 21-22, 31-32.) Plaintiff is a Canadian citizen and was in the United States on a work visa. (Id. ¶ 23.) Defendants allegedly offered to assist her with her citizenship status at the time

2

Plaintiff accepted their offer of employment. (Id. ¶¶ 23, 34-35.)

Following a December 2007 dinner with Shoshani and a client, Shoshani allegedly began to make sexual advances toward Plaintiff. (Id. ¶¶ 40-41.) Plaintiff felt compelled to play along with the advances, fearing she would lose her job and that she would not be able to obtain citizenship. (Id. ¶ 41.) Shoshani then allegedly overpowered her and forced her to have sex with him. (Id.) Thereafter, Shoshani began to regularly pressure Plaintiff to have sex with him as part of her job. (Id. ¶¶ 42-44, 48.) As of December 2007, Plaintiff had not been paid but continued working for Zip believing that she would be compensated in the future. (Id. ¶¶ 45-46, 49, 53, 59, 65.)

In January 2008, Plaintiff moved into a corporate apartment in White Plains. (Id. ¶ 54.) Meanwhile, Zip was still not paying Plaintiff, and she struggled to pay her bills and to buy food and personal hygiene products. (Id. ¶ 60.) As Plaintiff struggled financially, Shoshani allegedly began to use his own wealth as a means to control her, forcing her to beg him for money. (Id. ¶¶ 61-64.) He would periodically wire money to Plaintiff. (Id. ¶ 64.)

In the spring of 2008, Shoshani put Plaintiff in contact with his lawyer to help her resolve her immigration issues. (Id. ¶ 67.) Plaintiff gave Shoshani all of her documentation, the

3

majority of which were originals, but Shoshani never gave anything to the lawyer. (Id. ¶¶ 68-69.) At the same time, Shoshani began to say, "All you need is to be fucked" to Plaintiff frequently and continued to force sex upon her on a regular basis. (Id. ¶ 73.)

In June 2008, Shoshani purchased a company car for Plaintiff. (Id. ¶ 73.) Plaintiff thought this was a signal that Zip and Shoshani would eventually pay her in accordance with their agreement. (Id. ¶ 74.) Plaintiff was carrying out various administrative tasks for Zip and building its promotional efforts at the same time, and the business began to grow. (Id. ¶¶ 76-78, 80-81.) As a result of an increase in calls to the business, Shoshani purchased iPhones for Plaintiff and several other Zip employees. (Id. ¶ 79.)

In August 2008, Plaintiff allegedly attempted to discuss an unnamed issued regarding Zip with Shoshani. (Id. ¶ 85) He responded by telling her, "If you ever go against my wishes again and send out another empty helicopter, I will fuck you up." (Id. ¶ 85.) He apologized for his outburst later that night. (Id. ¶ 86.) Later, around February 2009, Shoshani decided he wanted "harsh, kinky sex." (Id. ¶¶ 93-94.) Although she attempted to refuse, he forced sex upon Plaintiff. (Id. ¶ 94.) In March 2009, after Shoshani's wife allegedly found out he was

having an affair with Plaintiff, he moved into the corporate apartment with her. (Id. ¶¶ 95-98.)

Shoshani would give Plaintiff cash to purchase supplies for Zip and let her use what was left over for personal use if Plaintiff gave him receipts. (Id. ¶ 101.) Most times, there was not enough money left for Plaintiff to pay her bills or eat. (Id. ¶ 102.) Shoshani continued to force her to have sex. (Id.) At the same time, Plaintiff still had not received a paycheck even though she was allegedly working twelve hours a day, seven days a week. (Id. ¶ 107.)

Around August 2009, Plaintiff allegedly complained to Shoshani that he treated her like a "slave" and a "whore" and that she planned to leave because of his continuous sexual harassment. (Id. ¶ 108.) Shoshani allegedly begged her to stay and also became increasingly sexually forceful, including forcing anal sex upon Plaintiff. (Id. ¶¶ 109-11.) He also began to publicly humiliate her at work, insulting her, causing her to cry, calling her "the rude nasty bitch," and telling other employees that she was worthless. (Id. ¶ 114.) Plaintiff began to have panic attacks and contemplating suicide, and her health deteriorated. (Id. ¶ 113, 116.) Plaintiff also allegedly told another employee that she was not getting paid and that Shoshani was physically and emotionally abusing her. (Id. ¶ 117.) After the employee told Shoshani, Shoshani allegedly became enraged,

threatened to fire Plaintiff, and began telling her things like "You are insane" and "Seek help." (Id. ¶¶ 118-19.)

In December 2009, Plaintiff went to Canada for the holidays and told Shoshani that she would not be returning because she could see that she would never be paid fairly for her work. (Id. ¶ 120.) Shoshani allegedly cried to her, demanded she return, and told her that he would "love, honor, respect, cherish, adore, support, [and] satisfy [her] forever." (Id. ¶ 121.) Plaintiff allegedly felt that she had no choice other than to return. (Id. ¶ 122.)

After Plaintiff returned, Shoshani continued to force anal sex upon her. (Id. ¶ 124.) He would leave visible bruises on her after sex and made her aware that he always carried a gun. (Id. ¶¶ 125-27.) At one point, Shoshani refused her toothpaste and deodorant. (Id. ¶ 129.) Around April 2010, Shoshani allegedly began to track Plaintiff using a "Friends and Family" feature on his phone. (Id. ¶ 131.) He also placed a GPS tracking device in the company car to monitor Plaintiff's location. (Id. ¶ 132.) In July 2010, Shoshani came to the apartment belligerently drunk, but Plaintiff would not let him in, called the police, and told them that Shoshani was abusive and kept guns inside the apartment. (Id. ¶ 133.)

Seeking to escape Shoshani's behavior, Plaintiff flew to Miami in August 2010 and did not tell anyone she had gone. (Id.

¶¶ 134-35.) Shoshani flew to Miami, promised her that he would resolve her immigration issue and that he would pay her, and threatened her by saying, "You know what I'm capable of." (Id. ¶¶ 135, 137-38.)

In September 2010, Plaintiff had serious abdominal pain and uncontrollable vaginal bleeding as a result of hemorrhaging from an ectopic pregnancy. (Id. ¶ 140.) She attempted to run away to a hotel in November 2010, but Shoshani tracked her to the hotel and appeared there. (Id. ¶ 142.)

Shoshani's abuse allegedly continued throughout 2011. (Id. ¶¶ 143-46.) For example, in July 2011, he allegedly told her, "You are a whore," spit in her face, grabbed her by the throat, and said, "I could throw you out that fucking window and no one would care." (Id. ¶ 147.) As she attempted to fight back, Shoshani allegedly kept saying, "C'mon. Harder. You're turning me on you little bitch." (Id.) He also mocked punching himself in the face and told her, "That's how you do it you worthless bitch," before dragging her to the door, throwing her into the hallway, and locking the door behind her. (Id.) Although someone called the police, Shoshani threatened Plaintiff that he was well-connected with the police department. (Id. ¶¶ 148-53.) The same night, Plaintiff checked into a hotel, and Shoshani showed up within an hour. (Id. ¶ 154.) After Plaintiff told him to leave her alone and to never trace her location again, Shoshani

allegedly responded, "You know better than to provoke me." (Id.
¶¶ 155-56.)

In August 2011, after Plaintiff returned from a trip,
Plaintiff found Shoshani waiting for her at her hotel. (Id. ¶¶
157-60.) Shoshani then booked the hotel room next to hers and
told her he had been waiting there to see her for two days. (Id.
¶ 161.) He grabbed her arm, told her he wanted to talk in his
room, and then proceeded to force sex upon her, saying, "You
feel like home." (Id. ¶ 162.) In November 2011, Shoshani again
tracked her to a hotel in Greenwich, Connecticut, and ripped the
license plates off her car. (Id. ¶ 165.) The next day, he texted
Plaintiff, "I can read your texts now and it will cost others
dearly." (Id. ¶ 166.) Despite this, Plaintiff returned to New
York and continued to work for Zip. (Id. ¶ 167.)

In February 2012, Plaintiff received a package at the
apartment in White Plains that contained Viagra for Shoshani,
and she attempted to hide the Viagra from him. (Id. ¶ 168.) When
Shoshani learned she mistakenly opened his package, he dragged
Plaintiff out of the shower by her hair, choked her until she
told him where the Viagra was, and then pushed her back into the
shower, bruising her side and spine. (Id. ¶ 169.)

Plaintiff attempted to drive away in the company car,
making it to Colorado. (Id. ¶¶ 170-71.) Shoshani reported the
car stolen and threatened to distribute naked pictures of

8

Plaintiff if she did not return. (Id. ¶ 172.) He also allegedly called U.S. Customs and Border Protection to report that Plaintiff was working in the country illegally. (Id. ¶ 173.) Plaintiff fled to Europe in September 2012, making it impossible for Shoshani to continue to track her iPhone. (Id. ¶¶ 174-75.) In response, he sent her three emails with sexually explicit photos and a video of her. (Id. ¶ 175.) He told her, "We need to talk or this is gonna get [fucking ugly]," and that the sexually explicit images would be sent out to her family, business contacts, and her children's school if she did not return. (Id. ¶ 176.) Plaintiff returned to New York in November 2012. (Id. ¶ 178.) Shoshani allegedly continued to sexually assault her regularly, wrap his hands around her throat, and whisper in her ear that he loved raping her. (Id. ¶ 179.)

Also in November 2012, at a restaurant in Tarrytown, New York, with several other Zip employees, after Plaintiff told Shoshani to stop making fun of another couple there for being overweight, he dragged her out of the restaurant by her arm and into the street, causing her to break her foot. (Id. ¶ 181.) Shoshani allegedly then threw her into the car. (Id.) Plaintiff begged him to pull over and stopped the car and then grabbed the wheel and forced him to pull over. (Id.) Shoshani reached for the OnStar emergency button and threatened to call the police. (Id. ¶ 182.) Because Plaintiff was still having problems with

her immigration status, she did not want him to call the police. (Id.) Shoshani then pushed her out of the car. (Id.) Thereafter, Plaintiff fled to Canada. (Id. ¶ 184.)

Shoshani begged Plaintiff to return to New York in March 2013, promising he would secure her a new visa. (Id. ¶¶ 185-86.) In May 2013, he sent her a written agreement to work as an Aviation Engineering Consultant for Manhattan Helicopters, which Plaintiff and Defendants agreed to both verbally and in writing. (Id. ¶¶ 187-88.) The agreement contained a year term and a daily rate of $650. (Id. ¶ 189.) Under the agreement, Defendants were to assist Plaintiff in getting a visa, and Shoshani sent Plaintiff a signed copy of a letter addressed to Customs and Border Protection related to her application; however, Shoshani never filed the paper work, and Plaintiff never got the visa. (Id. ¶¶ 193-94.) Plaintiff also continued her employment with Zip at this time. (Id. ¶¶ 195-97.)

Shoshani allegedly continued to abuse Plaintiff. In October 2013, he got into an argument with her and punched her in the face, breaking her nose. (Id. ¶ 202.) In December 2013, he allegedly came to the apartment drunk, pushed her head into the bed, and forced sex upon her, stating, "All you need is to be fucked." (Id. ¶ 203.)

In January 2014, Plaintiff went to Hawaii with the assistance of a pilot friend there. (Id. ¶¶ 204-05.) As soon as

she landed, she received an email from Shoshani simply saying, "Hawaii." (Id.) He also told her, "You know what I can do to [your pilot friend]." (Id. ¶ 206.) Although Plaintiff planned to flee to Australia, Shoshani threatened her and her family, causing Plaintiff to return to New York and to working for Zip and Manhattan Helicopters. (Id. ¶¶ 204, 207-09.)

In March 2014, Plaintiff found the GPS device in the company car. (Id. ¶ 210.) That June, when Shoshani and Plaintiff met with suppliers and customers, Shoshani would pinch the back of her arm, pretend to put his arm around her while crushing her ribs, kick her underneath the table, and hold her hands, twisting her fingers backwards, all to keep her from talking and resulting in bruises and contusions. (Id. ¶¶ 211-12.) In July 2014, while Shoshani was in France, Plaintiff began driving with her daughter to Florida, prompting Shoshani to text her saying that she could stay at his yacht club property in Florida. (Id. ¶ 213.) Shoshani then texted her in August, "People tell me you're talking shit about me... you know how I'll play it and retaliate against you." (Id. ¶ 214.)

Plaintiff again returned to New York in September and ultimately sought help from a women's shelter in October 2014. (Id. ¶¶ 216-20.) Meanwhile, Shoshani would frequently wear his gun in the apartment and continued to sexually assault her regularly. (Id. ¶¶ 221-23.) In December 2014, Plaintiff called

the police, started the process of obtaining an order of protection against Shoshani, and told him she would no longer speak to him. (Id. ¶¶ 224-25.) She also terminated her employment with Zip and Manhattan Helicopters in December 2014. (Id. ¶¶ 244-45.)

Shoshani, however, allegedly asked a mutual friend to keep him apprised of her whereabouts. (Id. ¶ 231.) In February 2015, while Plaintiff was at a restaurant in Greenwich, Shoshani arrived there, sat directly behind her, and lifted his coat to show her he was carrying a gun. (Id. ¶¶ 231-33.) Several days later, Plaintiff was granted an order of protection against him. (Id. ¶ 234.) In June 2015, he allegedly intentionally violated that order by hacking into her phone and following her to a police records office. (Id. ¶¶ 235-38.)

## II.  Discussion

### A. Legal Standard for Rule 12(b)(6) Motion to Dismiss

For a complaint to survive a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw
> the reasonable inference that the defendant is liable
> for the misconduct alleged. The plausibility standard

12

is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Supreme Court further stated,

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508

13

n.1 (2002); <u>Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood</u>
<u>Hotels & Resorts Worldwide, Inc.</u>, 369 F.3d 212, 217 (2d Cir.
2004). However, this principle is "inapplicable to legal
conclusions," <u>Iqbal</u>, 556 U.S. at 678, which, like the
complaint's "labels and conclusions," <u>Twombly</u>, 550 U.S. at 555,
are disregarded. Nor should a court "accept [as] true a legal
conclusion couched as a factual allegation." <u>Id.</u> In resolving a
12(b)(6) motion, a district court may consider the facts alleged
in the complaint, documents attached to the complaint as
exhibits, and documents incorporated by reference in the
complaint. <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d
Cir. 2010).

### B. Sex Discrimination

Defendants move to dismiss Counts 1, 4, and 8 on the
grounds that they fail to state a claim under NYSHRL and NYCHRL.

#### a. New York State Human Rights Law – Count 1

Defendants argue that Plaintiff has not linked the alleged
adverse actions to her gender. (Defs.' Mem. Law Supp. Mot.
Dismiss ("Defs.' MTD") at 8.) It is not entirely clear to the
Court what theory of discrimination Plaintiff seeks to pursue.
In her Memorandum of Law, Plaintiff cites case law related to
disparate treatment and asserts, without citing to the Second

Amended Complaint. (Pl.'s Mem. Law Opp. Mot. Dismiss (Pl.'s

Opp.") at 4.)

In making out a prima facie case of employment

discrimination under NYSHRL, the plaintiff must show: "(1) that

she is a member of a protected class, (2) that she was qualified

for [employment in the position], (3) that she suffered an

adverse employment action, and (4) can sustain a <u>minimal</u> burden

of showing facts suggesting an inference of discriminatory

motivation . . . ." <u>Littlejohn v. City of New York</u>, 795 F.3d

297, 311 (2d Cir. 2015).[1] A plaintiff need not make out a prima

facie case at the motion to dismiss stage, but she must give

"plausible support" for the requirements, including to "a

minimal inference of discriminatory motivation." <u>Id.</u>

It appears that the adverse employment action Plaintiff

seeks to link to her gender is her alleged constructive

discharge. While constructive discharge may be implicated in

some disparate treatment claims, it is ordinarily addressed in

the context of hostile work environment claims. <u>See Pa. State

Police v. Suders</u>, 542 U.S. 129, 142 (2004). That theory is more

applicable in this case. Plaintiff also discusses a hostile work

---

[1] The Second Circuit has noted that while the protections of
NYSHRL are coextensive with those of Title VII, the protections
of NYCHRL are broader. <u>See</u> <u>Mihalik v. Credit Agricole Cheuvreux
N. Am., Inc.</u>, 715 F.3d 102, 108-09 (2d Cir. 2013).

environment theory (Pl.'s Opp. at 5) and a quid pro quo theory.
(SAC ¶ 242.)

Hostile work environments that are "sufficiently severe or
pervasive to alter the conditions of the victim's employment"
are actionable under the NYSHRL. See Meritor Sav. Bank, FSB v.
Vinson, 477 U.S. 57, 67 (1986) (alterations, citations, and
quotations omitted); see also Pucino v. Verizon Wireless
Commc'ns, Inc., 618 F.3d 112, 117 n.2 (2d Cir. 2010) (applying
same standard to NYSHRL hostile work environment claim as to
Title VII hostile work environment claim). The conduct must be
both objectively hostile, in that a reasonable person would find
the environment to be abusive, and subjectively hostile, in that
the plaintiff actually perceived it to be abusive. Harris v.
Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993); see also Patane
v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) ("To state a claim
for a hostile work environment in violation of Title VII, a
plaintiff must plead facts that would tend to show that the
complained of conduct: (1) 'is objectively severe or pervasive—
that is, creates an environment that a reasonable person would
find hostile or abusive'; (2) creates an environment 'that the
plaintiff subjectively perceives as hostile or abusive'; and (3)
'creates such an environment because of the plaintiff's sex.'")
(alterations omitted) (quoting Gregory v. Daly, 243 F.3d 687,
691–92 (2d Cir. 2001)).

To determine whether a work environment is hostile, a court must look to the surrounding circumstances including:

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Harris, 510 U.S. at 23.

To survive a Rule 12(b)(6) motion to dismiss, a hostile work environment plaintiff "need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" Patane, 508 F.3d at 113 (alteration in original) (quoting Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)).

Hostile work environment claims can be both closely related but distinguishable from quid pro quo claims. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 752 (1998) (discussing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-72 (1986)). Hostile work environments involve harassment that is severe and pervasive, while quid pro quo claims involve "explicit or constructive alterations in the terms or conditions of employment." Id. The two types of claims may intersect when the

17

conduct related to alterations or conditions of employment becomes severe and pervasive. Id.; see also Carrero v. N.Y.C. Hous. Auth., 890 F.2d 569, 579 (2d Cir. 1989) ("Hostile environment and quid pro quo harassment causes of action are not always clearly distinct and separate. The discrimination which gives rise to them is not neatly compartmentalized but, as this case demonstrates, the two types of claims may be complementary to one another.").

To make out a prima facie case of quid pro quo sexual harassment, "a plaintiff must present evidence (1) that he was subject to unwelcome sexual conduct, and (2) that his reaction to that conduct was then used as the basis for decisions affecting compensation, terms, conditions, or privileges of employment." Figueroa v. Johnson, 648 F. App'x 130, 135 (2d Cir. 2016). "The relevant inquiry in a quid pro quo case is whether the supervisor has linked tangible job benefits to the acceptance or rejection of sexual advances." Karibian v. Columbia Univ., 14 F.3d 773, 778 (2d Cir. 1994).

Under either a quid pro quo or hostile work environment theory, Plaintiff's sex discrimination claim under NYSHRL survives the Motion to Dismiss. She has alleged severe sexual harassment, including sexual assault, by her boss, Shoshani, and that she believed she would be terminated if she did not acquiesce to his demands. (E.g., SAC ¶¶ 41-44.) The alleged

18

behavior continued throughout the course of Plaintiff's employment. (<u>E.g.</u>, <u>id.</u> ¶ 203.)

Defendants argue that none of the allegedly harassing behavior Plaintiff suffered happened in the workplace. (Defs.' Reply Mem. Law Supp. Mot. Dismiss at 2.) Based on the facts in the Second Amended Complaint, however, there were no clear lines between the workplace and outside of the workplace for Plaintiff and Shoshani. <u>See</u> <u>Andersen v. Rochester City Sch. Dist.</u>, 481 F. App'x 628, 630 (2d Cir. 2012) (dismissing hostile work environment claim where teacher was harassed by a student at school where she taught but noting that claim could be sustained in situations where there is a closer connection between the harassment and the workplace). Further, to bar <u>quid pro quo</u> claims involving conduct that took place outside the workplace would be to take all teeth out of that cause of action by allowing predatory supervisors to make sexual advances outside of the workplace while still holding victims' jobs hostage.

Defendants' Motion to Dismiss with respect to Count 1, sex discrimination under NYSHRL, is thus DENIED.

> b. New York City Human Rights Law – Counts 4 and 8

NYCHRL is "broader and more remedial" than NYSHRL or Title VII. <u>Williams v. N.Y.C. Hous. Auth.</u>, 872 N.Y.S.2d 27, 38 (N.Y. App. Div. 1st Dep't 2009). Accordingly, because the Court has

denied Defendants' Motion to Dismiss with respect to Count 1, their Motion is also DENIED with respect to Count 4, sex discrimination under the NYCHRL.

Pursuant to NYCHRL § 8-107(13), an employer can be held liable for the discriminatory acts of its employees when the employee "exercised managerial or supervisory responsibility" N.Y.C. Admin. Code § 8-107(13)(b). Defendants do not appear to move to dismiss Count 8 separately from contesting the underlying discrimination charge. (See Defs.' MTD at 10 n.4.) Accordingly, Count 8 also survives Defendants' Motion to Dismiss.

### C. Retaliation

#### 1.    New York State Human Rights Law – Count 3

To make out a prima facie case for retaliation in an employment discrimination case under NYSHRL, "a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" Littlejohn v. City of New York, 795 F.3d 297, 316 (2d Cir. 2015) (quoting Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)); Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d

349, 361 (S.D.N.Y. 2012) (same standard applies to NYSHRL retaliation claims as applies to federal claims).

Defendants argue that Plaintiff has not alleged that she engaged in protected activity. (Defs'. MTD at 10-12.) Under the NYSHRL, protected activity "is conduct that 'oppos[es] or complain[s] about unlawful discrimination.'" Mi-Kyung Cho v. Young Bin Cafe, 42 F. Supp. 3d 495, 507 (S.D.N.Y. 2013) (alterations in original) (quoting Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 312-13 (N.Y. 2004)).

In the Second Amended Complaint, Plaintiff alleges that she complained to Shoshani that he treated her like a "slave" and a "whore" and that she would be leaving and not returning because of his continuous sexual harassment and discriminatory treatment. (SAC ¶ 108.) She also alleges that, in response to her complaints, Shoshani began to force anal sex on her (id. ¶ 111) and that he would publicly humiliate her at work[2] by telling her she was worthless and calling her "the rude nasty bitch." (Id. ¶ 114.)[3]

Based on these allegations, Plaintiff engaged in protected activity by complaining about harassment to her supervisor,

---

[2] At this point, Plaintiff was allegedly employed by Zip.

[3] Courts in the Second Circuit have recognized retaliatory harassment as an adverse employment action, depending on its severity and causation. See Gregory v. Daly, 243 F.3d 687, 701 (2d Cir. 2001); Rueda v. City of New York, No. 11-CV-5248 (VSB), 2017 WL 4221081, at *11 (S.D.N.Y. Sept. 21, 2017).

Shoshani. Her allegations are somewhat threadbare. She does not explicitly state when she made the complaint, although the context of the Second Amended Complaint suggests that it took place between August and October of 2009. (Cf. SAC ¶ 104-17 (reciting series of events seemingly in chronological order).) Further, she does not allege when Shoshani's allegedly retaliatory actions took place. (See id. ¶¶ 111, 114.) Again, based on the narrative set forth in the Second Amended Complaint, they likely took place between August and October of 2009.

These events, however, fall outside of the three-year statute of limitations of the NYSHRL. See C.P.L.R. § 214(2); Esposito v. Deutsche Bank AG, No. 07 CIV. 6722(RJS), 2008 WL 5233590, at *4 (S.D.N.Y. Dec. 16, 2008). Accordingly, the Court DISMISSES the NYSHRL retaliation claim (Count 3).

> 2.   New York City Human Rights Law – Count 5

The NYCHRL also has a three-year statute of limitations. See Esposito, 2008 WL 5233590, at *4. Accordingly, Count 5 is DISMISSED because the relevant conduct occurred more than three years before Plaintiff filed suit.

D. Aiding and Abetting Sex Discrimination by Shoshani –
   Counts 2 and 6

Defendants seek to dismiss Plaintiff's claims for aiding
and abetting sex discrimination under the NYSHRL (Count 2) and
the NYCHRL (Count 6) on the grounds that an individual cannot
aid and abet his own alleged discriminatory conduct. (Defs.' MTD
at 12.) Under NYSHRL, individuals can be held liable if they act
as employers, N.Y. Exec. Law § 296(1), or if they "aid, abet,
incite, compel or coerce" discriminatory acts by employers. N.Y.
Exec. Law. § 296(6). The NYCHRL makes it is unlawful for "an
employer or an employee or agent thereof" to engage in
discriminatory employment practices and for an individual to
"aid, abet, incite, compel or coerce" discriminatory acts under
that statute. N.Y.C. Admin. Code §§ 8-107(1)(a), 8-107(6).The
two aiding and abetting laws are subject to the same standards.
See Malena, 886 F. Supp. 2d at 367.

An individual is an "employer" within the meaning of the
NYSHRL if that individual has an "ownership interest or any
power to do more than carry out personnel decisions made by
others." Patrowich v. Chem. Bank, 63 N.Y.2d 541, 542 (N.Y.
1984). The NYCHRL provides a broader basis for individual
liability than NYSHRL. See Malena, 886 F. Supp. 2d at 366.
Defendants do not appear to dispute that Shoshani acted as her

employer and thus did not move to dismiss Counts 1, 4, and 8 on that basis.

In this case, Plaintiff has alleged that, within the meaning of the NYSHRL and NYCHRL, Shoshani acted as her employer. (See, e.g., SAC ¶¶ 9, 13-14.) He can thus be held directly liable. Accordingly, the Court DISMISSES Counts 2 and 6 for aiding and abetting discrimination under the NYSHRL and the NYCHRL.

### E. Interference with Protected Rights under NYCRHRL § 8-107(19) – Count 7

Under the N.Y.C. Admin. Code § 107(19), it is unlawful "to coerce, intimidate, threaten or interfere with . . . any person in the exercise or enjoyment of . . . any right granted or protected" under the NYCHRL. "Threats are required to state a claim for violation of Admin Code § 8-107(19)." Sletten v. LiquidHub, Inc., No. 13 CIV. 1146 (NRB), 2014 WL 3388866, at *5 (S.D.N.Y. July 11, 2014) (quoting Poolt v. Brooks, 967 N.Y.S.2d 869 (N.Y. Sup. Ct. 2013)). In response to Defendants' Motion to Dismiss Count 7, Plaintiff cites to her SAC saying that "Shoshani also made Plaintiff aware that he carried a gun all day, every day." (SAC ¶ 127.) Plaintiff does not allege how he made her aware of this or when he made her aware. Further, she does nothing that creates an inference that this vague threat was related to her exercise of a protected right under the

NYCHRL. Plaintiff allegedly complained to Shoshani in December 2009 that she would not return to New York because she would never be paid fairly for her work. (SAC ¶ 120.) This is not a protected complaint under the NYCHRL as it does not relate to a protected class. Shoshani also allegedly threatened to fire her after another employee told him that she said Shoshani was abusing her. (SAC ¶¶ 117-19.) These allegations involve conduct occurring in 2009, however, and thus are time barred based on the NYCHRL's three-year statute of limitations. See Esposito, 2008 WL 5233590, at *4.

There are no other allegations occurring within the statute of limitations. Accordingly, Count 7 is DISMISSED.

### F. Plaintiff's Assault and Sexual Assault Claims – Counts 9 and 15

Defendants argue that many of Plaintiff's allegations with respect to assault and battery (Count 9) and sexual assault (Count 15) are time-barred, that C.P.L.R. § 213-C does not create an independent right of action, and that Plaintiff also fails to state a claim for assault and battery and sexual assault.

C.P.L.R. § 213-C provides that "a civil claim or cause of action to recover from a defendant" for injuries arising from rape, aggravated sexual abuse, or sexual conduct against a child, as defined in N.Y. Penal Law § 130, may be brought within

25

five years. The statutory language suggests that a plaintiff can bring a cause of action. Defendants cite no case law in support of their proposition that § 213-C does not create an independent cause of action. (Defs.' MTD at 14.) The little case law citing this section indicates that a plaintiff "may assert a civil cause of action for the alleged crime under CPLR § 213-c." <u>Volpe v. Paniccioli</u>, 57 Misc. 3d 1219(A), 2017 WL 5574692, at *1 n.1 (N.Y. Sup. Ct. 2017).

Defendants also argue that Plaintiff only sets forth two specific instances of sexual assault occurring after August 10, 2010 (five years before the filing of this action) and that those are not plausible. Defendants' argument is conclusory. As Defendants point out, Plaintiff sets forth multiple specific allegations of rape or sexual assault: one in August 2011 (SAC ¶ 162), several over the course of November 2012 (<u>id.</u> ¶ 179), and in December 2013. (<u>Id.</u> ¶ 203.) Accordingly, Defendants' Motion to Dismiss is DENIED with respect to Count 15.

With respect to Count 9, the statute of limitations for assault and battery is one year. C.P.L.R. § 215(3). Plaintiff's Second Amended Complaint sets forth no allegations of assault and battery occurring after August 2014. Thus, Count 9 is DISMISSED.

G. Breach of Contract - Count 10

Defendants next move to dismiss Count 10 for breach of contract on the basis that Plaintiff never entered into a contract with Shoshani in his personal capacity, that any breach of contract claim against Zip or Shoshani is time barred, and that she fails to state a claim for breach of contract against Manhattan Helicopter.

In New York, the statute of limitations for a breach of contract claim is six years. C.P.L.R. § 213(2). Plaintiff argues that she was employed by Zip for multiple one-year terms. (Pl.'s Opp. at 14-15.) Under New York law, it is well established that, "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." Goldman v. White Plains Ctr. for Nursing Care, LLC, 11 N.Y.3d 173, 177 (N.Y. 2008) (quoting Sabetay v. Sterling Drug, 69 N.Y.2d 329, 333 (N.Y. 1987)). However, "where one enters into the employ of another under a contract for a year's service at a yearly salary and continues in the employment after the year's end, there is available an inference or implication of fact that the parties intended to renew for another year." Cinefot Int'l Corp. v. Hudson Photographic Indus., 13 N.Y.2d 249, 252 (N.Y. 1963). This presumption "can be rebutted by demonstrating that the parties did not intend to allow a contract to renew automatically."

27

Goldman, 11 N.Y.3d at 177 (holding that contractual provision stating that term would end after two years if the parties did not agree upon an extension rebutted presumption of renewal). In this case, Defendants do not set forward anything to rebut the presumption that Plaintiff's contract, beginning in November 2007, renewed annually.

Under New York law, if "a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew." Guilbert v. Gardner, 480 F.3d 140, 150 (2d Cir. 2007). In this case, Plaintiff alleges a series of breaches of her employment contract based on failure to pay her wages. She alleges that she was employed by Zip under a series of one-year contracts, beginning in November 2007 (SAC ¶ 32) and ending when her employment with Manhattan Helicopters began in May 2013. Plaintiff filed the instant case on August 10, 2015. Thus, her allegations after August 10, 2009 with respect to breach of contract can withstand the Motion to Dismiss.

Defendants argue that Plaintiff does not allege that she entered into an employment agreement with Shoshani in his personal capacity. (Defs.' MTD at 15.) The Second Amended Complaint, however, says that Zip and Shoshani agreed that she would be paid a salary of $150,000.000 and that she would resume

work immediately. (SAC ¶ 32.) Plaintiff can thus proceed with the breach of contract claim against Shoshani at this stage.

Defendants also argue that Plaintiff's claims against Manhattan Helicopters are implausible— specifically that it's implausible Plaintiff would have voluntarily entered into an employment agreement with Shoshani after enduring years of abuse and non-payment. It is not the province of the Court to probe into Plaintiff's credibility[4] at this stage, and the Second Amended Complaint adequately states a claim for breach of contract at this stage.

Lastly with respect to Plaintiff's contract claim, the Court notes that it may be duplicative of or preempted by her statutory claims under the Fair Labor Standards Act (Count 17) and New York Labor Law (Count 18). See <u>Sosnowy v. A. Perri Farms, Inc.</u>, 764 F. Supp. 2d 457, 467 (E.D.N.Y. 2011). At this stage, however, Plaintiff may plead these claims in the alternative. <u>See</u> Fed. R. Civ. P. 8(d)(2).

Accordingly, Defendants' Motion to Dismiss is DENIED with respect to Count 10.

---

[4] The Court notes, however, that victims of intimate partner violence often make choices that seem irrational. <u>See</u> World Health Organization, <u>Understanding and addressing violence against women</u>, 12 (2012), http://apps.who.int/iris/bitstream/10665/77432/1/WHO_RHR_12.36_eng.pdf.

H. Quantum Meruit and Unjust Enrichment - Counts 11 and 12

With respect to Plaintiff's quasi-contract claims in Counts 11 and 12, Defendants argue that Plaintiff's claims are time barred, that she cannot bring quasi-contractual claims since she has also brought a claim for breach of contract, and that she fails to state a claim. Like contract claims, quasi-contract claims are subject to a six-year statute of limitations. See C.P.L.R. § 213(2). Thus, as with her contract claim, although Plaintiff cannot rely on any allegations that occurred prior to August 10, 2009, she has alleged numerous instances where Defendants failed to compensate her for her services after that date. (See SAC ¶¶ 104, 190-91, 211.)

Although Defendants are correct that a plaintiff cannot bring quasi-contractual claims where an express agreement covers the dispute between the parties, Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005), Plaintiff may plead these claims in the alternative to her contract claim at this stage of the litigation. Knudsen v. Quebecor Printing (U.S.A.) Inc., 792 F. Supp. 234, 237 (S.D.N.Y. 1992); Fed. R. Civ. P. 8(d)(2).

To state a claim for quantum meruit under New York law, the plaintiff must establish: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to

30

whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." <u>Mid-Hudson Catskill Rural Migrant Ministry</u>, 418 F.3d at 175 (quoting <u>Revson v. Cinque & Cinque, P.C.</u>, 221 F.3d 59, 69 (2d Cir. 2000)). Defendants argue that any expectation of compensation by Plaintiff was unreasonable. Although expectation of compensation might be per se unreasonable in certain circumstances, to probe into whether Plaintiff's expectation was reasonable would ask this Court to assess her credibility when her Second Amended Complaint adequately alleges expectation of compensation. This is not appropriate in addressing a Motion to Dismiss.

Defendants' cited cases, including <u>Tasini v. AOL, Inc.</u>, 851 F. Supp. 2d 734 (S.D.N.Y.), <u>aff'd</u>, 505 F. App'x 45 (2d Cir. 2012), are inapposite. In <u>Tasini</u>, Huffington Post contributors sued alleging that the company profited from their unpaid articles, but the Court held that "plaintiffs entered into their transactions with the defendants with full knowledge of the facts and no expectation of compensation other than exposure." <u>Id.</u> at 740. That is not the case here.

To state a claim for unjust enrichment, a plaintiff must show that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. <u>Mandarin Trading Ltd. v. Wildenstein</u>, 16 N.Y.3d 173,

182 (N.Y. 2011). Defendants do not make a separate argument as to why Plaintiff's unjust enrichment claim should be dismissed. Thus, Defendant's Motion to Dismiss is DENIED with respect to Counts 11 and 12.

> I. Promissory Estoppel – Count 13

Defendants argue that Plaintiff's claim for promissory estoppel (Count 13) is time barred because it is based on promises made between late 2007 and early 2008, is duplicative of her contract claim, is not a valid cause of action in the employment context, and does not state a claim against Manhattan Helicopters or Shoshani. (Defs.' MTD at 18-20.)

Although there is "no categorical rejection of promissory estoppel in the employment context," "several courts within the Second Circuit have held that 'New York does not recognize promissory estoppel as a valid cause of action in the employment context.'" Baguer v. Spanish Broad. Sys., Inc., No. 04-CV-8393 (KMK), 2007 WL 2780390, at *5 (S.D.N.Y. Sept. 20, 2007) (quoting Fontana v. Potter, No. 01 CV 7002 SLT RML, 2005 WL 2039194, at *7 (E.D.N.Y. Aug. 24, 2005)). The Court adopts that approach here as there is no promise that arises separate from Plaintiff's alleged employment relationship with Defendants. Accordingly, Count 13 is DISMISSED.

J. Intentional Infliction of Emotional Distress – Count 14

Defendants next argue that Plaintiff's claim for intentional infliction of emotional distress ("IIED," Count 14) should be dismissed because it is time barred and because it is duplicative of her tort claims for assault and battery.

To state a claim for IIED, "the conduct alleged must be so outrageous in character and extreme in degree as to surpass the limits of decency so 'as to be regarded as atrocious and intolerable in a civilized society.'" Leonard v. Reinhardt, 799 N.Y.S.2d 118, 119 (N.Y. App. Div. 2d Dep't 2005) (quoting Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143 (N.Y. 1985)).

The statute of limitations for IIED claims is one year. C.P.L.R. § 215(3). Although some New York courts have held that IIED is not subject to the continuing violations exception, see Foley v. Mobil Chem. Co., 626 N.Y.S.2d 906, 907 (N.Y. App. Div. 4th Dep't 1995), others have held that it is. See Estreicher v. Oner, 49 N.Y.S.3d 530, 532 (N.Y. App. Div. 2d Dep't 2017); Mariani v. Consol. Edison Co. of N.Y., 982 F. Supp. 267, 273 (S.D.N.Y. 1997), aff'd, 172 F.3d 38 (2d Cir. 1998). The Court holds that it is appropriate to apply the exception here, where Shoshani's conduct involved a longstanding campaign of harassment and intimidation "so long as the final actionable event occurred within one year of the suit." Estreicher, 148 49

33

N.Y.S.3d at 532; see Allam v. Meyers, No. 09 CIV. 10580 KMW, 2011 WL 721648, at *6 (S.D.N.Y. Feb. 24, 2011) (describing ways that a "deliberate and malicious campaign of harassment or intimidation" satisfies the requirement that conduct be extreme and outrageous to constitute IIED).

In this case, in February 2015, Shoshani allegedly showed up at a restaurant where Plaintiff was and showed her he was carrying a gun. (SAC ¶¶ 231-33.) In June 2015, he allegedly violated an order of protection Plaintiff had against him and hacked into her phone. (Id. ¶¶ 235-36.) These allegations, which occurred within the year before Plaintiff filed suit, are sufficient to withstand Defendants' Motion to Dismiss. See Eves v. Ray, 42 A.D.3d 481, 483 (N.Y. App. Div. 2d Dep't 2007) (sustaining IIED verdict where counter-claim defendant threatened claimant physically and financially, stalked him, and continued such behavior despite fact that claimant had obtained a temporary order of protection).

Courts applying New York law "held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory." Caravalho v. City of New York, No. 13-CV-4174 (PKC)(MHD), 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 31, 2016), reconsideration denied, 2016 WL 4154273 (S.D.N.Y. July 29, 2016) (quoting Brewton v. City of New York, 550 F. Supp. 2d 355, 370 (E.D.N.Y.

34

2008)), appeal docketed, No. 17-1944 (2d Cir. June 16, 2017); see Fischer v. Maloney, 43 N.Y.2d 553, 557-58, (N.Y. 1978). In other words, where a plaintiff can recover based on assault and battery claims, she cannot also recover pursuant to an IIED claim based on the same conduct. See Caravalho, 2016 WL 1274575, at *23.

Plaintiff has set forward additional allegations, occurring more than one year before August 2015 but that were part of the same campaign of harassment and intimidation, that are not duplicative of her assault claims. For example, Shoshani purportedly kept her in harsh living conditions without a bed, enough food to eat, or basic hygiene products (SAC ¶¶ 102, 128-29); stalked her through her iPhone and a GPS tracker on her car (id. ¶¶ 131-32, 161, 165-66); threatened to distribute naked pictures and a sexually explicit video of her if she did not comply with his demands (id. ¶¶ 172, 175-76). See Eves, 42 A.D.3d at 483.

Accordingly, Defendants' Motion to Dismiss Count 14 is DENIED.

### K. Victims of Gender Motivated Violence Protection Act – Count 16

The Victims of Gender Motivated Violence Protection Act provides a cause of action based on crimes of violence motivated by gender, defined as "a crime of violence committed because of

gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." N.Y.C. Admin. Code § 8-901-05. Defendants argue that Plaintiff does not allege that any of the incidents in the Second Amended Complaint were motivated by gender.

In this case, Plaintiff is a woman who was allegedly sexually assaulted, assaulted, and otherwise abused by Defendant, a man.[5] See supra pp. 25-26. For example, in July 2011,[6] Shoshani called Plaintiff a "whore," a "little bitch," and a "worthless bitch" while grabbing her by the throat and physically dragging her to the door of the apartment and throwing her outside. (SAC ¶ 147.) Shoshani's use of gendered terms while assaulting Plaintiff is sufficient to create an inference that he committed the assault, at least in part, because of his animus towards women. See N.Y.C. Admin. Code § 8-

---

[5] An estimated one in five women will be raped at some point during her lifetime, and 91% of victims of rape and sexual assault are women. National Sexual Violence Resource Center, Statistics about Sexual Assault (2015), https://www.nsvrc.org/sites/default/files/2015-01/publications_nsvrc_factsheet_media-packet_statistics-about-sexual-violence_0.pdf. Roughly 98% of women report being raped by male perpetrators. Centers for Disease Control and Prevention, The National Intimate Partner and Sexual Violence Survey: 2010 Summary Report, at 24 (2010), https://www.cdc.gov/violenceprevention/pdf/nisvs_report2010-a.pdf.

[6] The statute of limitations for the Gender Motivated Violence Protection Act is seven years. N.Y.C. Admin. Code § 8-905.

903(b); William C. Donnino, Practice Commentary, N.Y. Penal Law § 485.05 (McKinney) ("Thus, for example, in the commission of a first-degree assault, that the defendant and the victim are of different races is not, alone, sufficient to prove a "hate crime"; but, that fact plus the defendant's words during the assault to the effect that the assault is taking place because of the victim's race would constitute evidence of a 'hate crime.'")[7]; <u>Whore</u>, Merriam-Webster (Feb. 28, 2018), https://www.merriam-webster.com/dictionary/whore (including "a woman who engages in sexual acts for money : PROSTITUTE; <u>also, informal + offensive</u> : a promiscuous or immoral woman" among definitions for "whore"); <u>Bitch</u>, Merriam-Webster, https://www.merriam-webster.com/dictionary/bitch ("<u>often offensive</u> : a malicious, spiteful, or overbearing woman — sometimes used as a generalized term of abuse" among definitions for "bitch").

---

[7] The Practice Commentary is cited with approval in <u>People v. Spratley</u>, 59 N.Y.S.3d 495, 497 (N.Y. App. Div. 3d Dep't 2017). While New York State's Hate Crimes statute is not identical to the Gender Motivated Violence Protection Act, the Court finds the analogy helpful, given the lack of case law addressing the statute at issue here. Under the Gender Motivated Violence Protection Act, however, the motive for the crime of violence need only be proven by a preponderance of the evidence. N.Y.C. Admin. Code § 8-906.

Plaintiff has thus adequately alleged gender-motivated violence at this stage of the litigation.[8] Defendants' Motion to Dismiss is thus DENIED with respect to Count 16.

### L. Fair Labor Standards Act and New York State Labor Law – Counts 17 and 18

Defendants next move to dismiss Plaintiff's claim for violations of the Fair Labor Standards Act ("FLSA") and New York State Labor Law ("NYLL"), arguing that her claims are time barred, that they are duplicative of her contract claims, and that she fails to state a claim.

The statute of limitations for FLSA claims is two years from "when the plaintiff knows or has to reason know of the injury that is the basis for his claim, which occurs at the time the employee was or should have been paid" or three years in the case of a willful violation. Chen v. Yuen, No. 04-CV-06579 (GBD)(KNF), 2015 WL 7758532, at *2 (S.D.N.Y. Dec. 1, 2015)

---

[8] The Court acknowledges that there is scant case law addressing the Victims of Gender Motivated Violence Protection Act. However, Defendants' suggestion that cases like Cordero v. Epstein, 869 N.Y.S.2d 725, 731 (N.Y. Cty. Sup. Ct. 2008), represent "controlling precedent" ignores basic principles of what law is binding on this Court. Defendants also cite Adams v. Jenkins, 115745/2003, 2005 WL 6584554, slip op. at 8 (N.Y. Cty. Sup. Ct. Apr. 22, 2005), which was decided on summary judgment. The Court also acknowledges Cartright v. Lodge, No. 15-CV-9939 (KMW)(RLE), 2017 WL 1194241, at *9 (S.D.N.Y. Mar. 30, 2017), which involved a denial of attorney's fees under the Act on default judgment. Looking at the complaint there, that case can be easily factually distinguished. It did not involve sexual assault and primarily relied on the defendant's reputation as a misogynist.

(noting that continuing violation theory does not apply to FLSA claims); 29 U.S.C. § 255(a). A violation is willful when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Willfulness is typically a question of fact. See Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 937 (S.D.N.Y. 2013).

At this stage, Plaintiff has alleged adequate facts to assert that Defendants' violations of FLSA were willful, as she alleges that she was not paid by Defendants at all. (See, e.g., SAC ¶ 192.)[9] To the extent the violations were willful, all allegations occurring before August 10, 2012 are time barred. Plaintiff can proceed with her FLSA claim within those time constraints.

The statute of limitations for New York Labor Law ("NYLL" claims is six years. N.Y. Lab. Law § 663(3). Plaintiff can thus pursue claims under NYLL insofar as she relies on allegations occurring after August 10, 2009.

Plaintiff has stated a claim under both FLSA and NYLL as she has set forth allegations that she was not paid for her labor at all while employed at Zip and Manhattan Helicopter. (See, e.g., SAC ¶ 192.)

---

[9] The facts as alleged, if true, would violate more than FLSA. The Thirteenth Amendment comes to mind.

While Plaintiff's labor law claims in Counts 17 and 18 may be duplicative of her contract claims, she can plead in the alternative at this stage. Supra p. 29.

Defendants' Motion to Dismiss Counts 17 and 18 is thus DENIED, subject to the time limitations set forth above.

### M. Fraud – Count 19

Defendants argue that Plaintiff fails to plead her fraud claim with specificity and that it is duplicative of her breach of contract claim. (Defs.' MTD at 23-24.) Plaintiff cites various statements by Shoshani that he would pay her and that he would help her obtain citizenship. (Pl.'s Opp. at 24, 25 n.91.) All of the statements cited by Plaintiff occurred outside of the statute of limitations, which is six years for fraud claims. See C.P.L.R. § 213(8).

Other statements occurring within the statute of limitations period are either not specifically pleaded (see, e.g., SAC ¶¶ 110, 138, 186) or are based on terms set forth in a contract (see, e.g., SAC ¶¶ 193-94). See Wild Bunch, SA v. Vendian Entm't, LLC, 256 F. Supp. 3d 497, 503 (S.D.N.Y. 2017). Accordingly, Plaintiff's fraud claim (Count 19) is DISMISSED.

### N. Leave to Amend

In summary, the following Counts remain:

- Count 1: sex discrimination under NYSHRL

- Count 4: sex discrimination under NYCHRL
- Count 8: employer liability for discriminatory conduct under NYCHRL
- Count 10: breach of contract
- Count 11: quantum meruit
- Count 12: unjust enrichment
- Count 14: intentional infliction of emotional distress
- Count 15: rape/sexual abuse (against Shoshani)
- Count 16: violation of the Gender Motivated Violence Protection Act (against Shoshani)
- Count 17: violation of Fair Labor Standards Act
- Count 18: violation of New York Labor Law

The Court has dismissed the following Counts:

- Count 2: aiding and abetting sex discrimination under NYSHRL
- Count 3: retaliation under NYSHRL
- Count 5: retaliation under NYCHRL
- Count 6: aiding and abetting sex discrimination under NYCHRL
- Count 7: interference with protected rights under NYCHRL
- Count 9: assault and battery
- Count 13: promissory estoppel
- Count 19: fraud and misrepresentation

The remaining question is whether Plaintiff shall be given leave to replead with respect to any of the dismissed claims. When a complaint has been dismissed, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss. Hutchison v. Deutsche Bank Sec. Inc., 647 F.3d 479, 491 (2d Cir. 2011).

Because Plaintiff can proceed with her sex discrimination claims against Shoshani as an individual, it is unnecessary for her to amend Counts 2 and 6 for aiding and abetting sex discrimination. It would be futile for her to amend her retaliation claims (Counts 3 and 5), interference with protected rights claim (Count 7), and assault and battery claims (Count 9) as they are time barred. Moreover, Plaintiff has already amended her Complaint twice and has had ample opportunity to cure its defects, so justice does not require that she be given leave to amend these claims. She cannot amend her promissory estoppel claim (Count 13) because such claims are not permitted in the employment context. Finally, Plaintiff's fraud claim is largely time barred and is duplicative of her contract claims, making amendment futile. To the extent Shoshani made fraudulent statements within the statute of limitations, Plaintiff has already had ample opportunity to amend but has failed to do so. Accordingly, leave to amend is DENIED with respect to all dismissed counts.

III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Defendants are to answer the remaining Counts within 30 days of the date of this Memorandum & Order.

SO ORDERED.

DATED:    New York, NY
          March 26, 2018


_Deborah A. Batts_
          Deborah A. Batts
      United States District Judge