**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KATHARINA ROELCKE,

     Plaintiff,

         -against-

ZIP AVIATION, LLC, MANHATTAN
HELICOPTERS LLC, and ITAI SHOSHANI,
individually,

     Defendants.

Case No. 15-cv-06284-JGK-JLC

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT [REDACTED]**

ZUCKERMAN SPAEDER LLP
Shawn P. Naunton
Devon W. Galloway
Nell Z. Peyser
485 Madison Avenue, 10th Floor
New York, New York 10022

*Attorneys for Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 3

THE LEGAL STANDARDS GOVERNING THIS MOTION ...................................................... 7

ARGUMENT .......................................................................................................................... 7

    I.    SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFF'S
          EMPLOYMENT CLAIMS (COUNTS I, IV, VII, XVII, AND XVIII)
          BECAUSE PLAINTIFF IS NOT A COVERED EMPLOYEE UNDER THE
          RELEVANT EMPLOYMENT STATUTES. ........................................................... 7

          a)    The Law Governing Plaintiff's Employment Claims ........................................ 7

             1)  Employee Status Is Required .................................................................... 7

             2)  Employee Status Under the NYSHRL and the NYCHRL ............................... 8

             3)  Employee Status Under the FLSA ............................................................ 9

             4)  Employee Status Under the NYLL .......................................................... 9

          b)    Plaintiff Is Not A Covered Employee Under the Relevant
               Employment Statutes ........................................................................... 9

    II.   SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFF'S
          BREACH OF CONTRACT CLAIM (COUNT X) BECAUSE PLAINTIFF HAS
          NOT PRESENTED EVIDENCE ESTABLISHING FORMATION OF A
          CONTRACT ....................................................................................................... 12

          a)    The Law Governing Plaintiff's Breach of Contract Claim ............................. 12

          b)    There Is No Evidence Establishing Formation of a Contract .......................... 13

             1)  The Alleged Oral Agreement .................................................................. 13

             2)  The Consulting Agreement ...................................................................... 14

    III.  SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFF'S
          QUANTUM MERUIT AND UNJUST ENRICHMENT CLAIMS (COUNTS XI
          AND XII) BECAUSE PLAINTIFF HAS NOT PRESENTED EVIDENCE
          SHOWING A REASONABLE EXPECTATION TO BE PAID ............................. 16

          a)    The Law Governing Plaintiff's Quantum Meruit and Unjust Enrichment
               Claims ................................................................................................... 16

b)   There Is No Evidence Plaintiff Had A Reasonable Expectation to be Paid........ 17

IV.   SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFF'S
ASSAULT CLAIMS (COUNTS XIV, XV, AND XVI) BECAUSE OF THE
INCONSISTENT AND INCOMPLETE  NATURE OF HER TESTIMONY......... 18

CONCLUSION......................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby*, *Inc.*,
   477 U.S. 242 (1986) ............................................................................ 7

*Beautiful Jewelers Private, Ltd. v. Tiffany & Co.*,
   No. 06 Civ. 3085 (GBD), 2010 WL 2720007 (S.D.N.Y. June 28, 2010) ................................. 14

*Browning v. Ceva Freight, LLC*,
   885 F. Supp. 2d 590 (E.D.N.Y. 2012)............................................................. 8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................ 7

*D'Amico v. City of N.Y.*,
   132 F.3d 145 (2d Cir.1998)..................................................................... 7

*Estate of Goth v. Tremble*,
   59 A.D.3d 839 (3d Dep't 2009) ................................................................ 18

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*,
   375 F.3d 168 (2d Cir. 2004)................................................................... 12

*Franze v. Bimbo Bakeries, USA, Inc.*,
   826 F. App'x 74 (2d Cir. 2020)................................................................ 11

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir. 1996).................................................................... 12

*Int'l Paper Co. v. Suwyn*,
   978 F. Supp. 506 (S.D.N.Y. 1997) ............................................................. 16

*Jeffreys v. City of New York*,
   426 F.3d 549 (2d Cir. 2005).................................................................. 20

*Leber Associates, LLC v. Entertainment Grp. Fund, Inc.*,
   No. 00 Civ. 3759 LTS MHD, 2003 WL 21750211 (S.D.N.Y. July 29, 2003). ....................... 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).................................... 7

*McHenry v. Fox News Network*,
   2020 WL 7480622 (S.D.N.Y. Dec. 18, 2020)..................................................... 8

*McNally v. Yarnall*,
   764 F. Supp. 838 (S.D.N.Y. 1991) .......................................................... 10, 11

*Meyer v. U.S. Tennis Ass'n*,
    607 F. App'x. 121 (2d Cir. 2015) ........................................................ 9

*Meyer*, 607 F. App'x at 123 .................................................................. 10

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005) ............................................................. 16

*Milton Abeles, Inc. v. Farmers Pride, Inc.*,
    603 F. Supp. 2d 500 (E.D.N.Y. 2009) ................................................ 16

*Nusbaum v. E-Lo Sportswear*, 17-CV-3646 (KBF),
    2017 WL 5991787 (S.D.N.Y. Dec. 1, 2017) ...................................... 13

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ............................................................. 12

*Revson v. Cinque & Cinque, P.C.*,
    221 F.3d 59 (2d Cir. 2000) ............................................................... 16

*Saleem v. Corp. Transp. Grp. Ltd.*,
    854 F.3d 131 (2d Cir. 2017) ......................................................... 8, 11

*Saleem v. Corp. Transp. Grp., Ltd.*,
    52 F. Supp. 3d 526 (S.D.N.Y. 2014) .................................................. 9

*Sellers v. The Royal Bank of Canada*,
    12 Civ. 1577(KBF), 2014 WL 104682 (S.D.N.Y. Jan. 8, 2014) ............ 10

*Soumayah v. Minnelli*,
    41 A.D.3d 390 (1st Dep't 2007) ...................................................... 17

*U.S. v. City of New York*,
    359 F.3d 83 (2d Cir. 2004) ............................................................... 8

*Wang v. Phoenix Satellite Television US, Inc.*,
    976 F. Supp. 2d 527 (S.D.N.Y. 2013) ................................................ 8

*York v. Ass'n of Bar of the City of New York*,
    286 F.3d 122 (2d Cir. 2002) ............................................................. 8

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................ 2

Defendants Itai Shoshani, Zip Aviation, LLC ("Zip"), and Manhattan Helicopters LLC ("MH") (together, "Defendants") respectfully submit their memorandum of law in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## PRELIMINARY STATEMENT

Itai Shoshani is the principal owner of Zip and MH -- companies that provide helicopter tours of New York City and chartered trips to surrounding areas. Mr. Shoshani met Plaintiff when she visited New York City in 2007. At that time, Plaintiff (a Canadian citizen) told Mr. Shoshani that she is a pilot with a degree in aerospace engineering from MIT. Mr. Shoshani subsequently learned that these were lies, and that Plaintiff has a fraught relationship with the truth.

Mr. Shoshani and Plaintiff engaged in a consensual romantic relationship for approximately seven years, from December 2007 to December 2014. During that time, Mr. Shoshani provided Plaintiff with an apartment and supported her financially. Plaintiff sometimes performed limited tasks for Zip and MH and spent time at their offices. When Mr. Shoshani ended their relationship in December 2014, Plaintiff launched a campaign based on lies intended to harass, embarrass, and extort money from Mr. Shoshani. Plaintiff filed two baseless complaints against Mr. Shoshani with the FAA; filed a baseless complaint against Defendants with the IRS, upon information and belief; sought *ex parte* orders of protection against Mr. Shoshani on three separate occasions, each on the basis of false and perjurious statements; made harassing communications to Mr. Shoshani, his ex-wife, and his former sister-in-law; and ultimately filed the salacious and defamatory Complaint in this action, and discussed its contents with reporters from *The New York Post*.

This Court now has an opportunity to end Plaintiff's regrettable smear campaign. In her 353 paragraph Complaint, Plaintiff falsely alleges in graphic detail that Mr. Shoshani routinely

raped her and turned her into a "sex slave"; that Defendants harassed and discriminated against her; and that Defendants refused to pay her for work under federal law, state law, and employment agreements that never existed. Based on these allegations, Plaintiff asserts (i) **employment claims**, alleging sex discrimination under the New York State Human Rights Law and the New York City Human Rights Law, and unpaid minimum wage claims under the Fair Labor Standards Act and the New York Labor Law (Counts I, IV, VII, XVII, and XVIII); (ii) a **breach of contract claim**, based on an alleged oral agreement and a Consulting Agreement (Count X); (iii) **quantum meruit and unjust enrichment claims** (Counts XI and XII); and (iv) **assault claims**, alleging rape / sexual abuse, intentional infliction of emotional distress, and violation of New York City's Gender Motivated Violence Protection Act (Counts XIV, XV, and XVI).

The record developed in discovery demonstrates that Defendants are entitled to summary judgment on all of Plaintiff's claims. To wit:

- Summary judgment should be entered on all of Plaintiff's **employment claims** because undisputed evidence establishes that Plaintiff was not a covered employee under the relevant statutes;

- Summary judgment should be entered on Plaintiff's **breach of contract claim** because undisputed evidence establishes that there was no oral agreement between the parties, and the parties never intended to perform under the Consulting Agreement;

- Summary judgment should be entered on Plaintiff's **quantum meruit and unjust enrichment claims** because undisputed evidence establishes that Plaintiff did not have a reasonable expectation to be paid for the limited services she performed for Zip and MH – and in fact Plaintiff was told she would not be paid; and

- Summary judgment should be entered on all of Plaintiff's **assault claims** because the **only** record evidence in support of these claims is Plaintiff's own uncorroborated testimony, which is not credible and must be rejected in light of the inconsistent and incomplete nature of her testimony, and Plaintiff's extensive and demonstrable history of lying. *See Jeffreys v. City of New York,* 426 F.3d 549, 551 (2d Cir. 2005).

## STATEMENT OF FACTS

Itai Shoshani is the owner and Chief Executive Officer of Zip and MH.[1] Declaration of Shawn P. Naunton in Support of Defendants' Mot. for Summ. J. (hereinafter "Naunton Decl.") Ex. 5, ¶ 1. In 2007, Mr. Shoshani met Katharina Roelcke ("Plaintiff"), who told Mr. Shoshani that she was a Canadian citizen and was staying in New York City on a tourism visa. Statement of Material Facts in Support of Defendants' Motion for Summary Judgment ("SUMF"), ¶27. In July 2007, Plaintiff offered to work for Zip / MH, but Mr. Shoshani refused to hire Plaintiff because he could not afford her salary and because she was not authorized to work in the United States. *Id.*, ¶ 15.

For approximately seven years, Mr. Shoshani and Plaintiff had a sexual relationship that was always consensual. SUMF, ¶ 28. Mr. Shoshani moved into an apartment with Plaintiff; paid for her basic living necessities; and travelled frequently with Plaintiff and Plaintiff's daughter,

---

[1] Zip and MH are branded as separate companies and have separate employee payrolls, but are owned by Mr. Shoshani and have the same owner and the same management. Thus, throughout this memorandum of law, the Zip and MH entities are sometimes referred to together as "Zip / MH" or "Zip and MH".

Sevannah. *Id.*, ¶¶ 29, 31. Mr. Shoshani never had sex with Plaintiff without her explicit consent, and he never physically or emotionally abused Plaintiff. *Id.*, ¶ 28.

Plaintiff voluntarily helped Mr. Shoshani with administrative Zip and MH tasks without much oversight, and she used independent judgment and self-direction for much of her work. SUMF, ¶¶ 13-14. Plaintiff was free to come and go from Zip / MH's offices as she pleased without reprimand, and did not appear at the offices on a fixed schedule. *Id.*, ¶11. At certain times, Plaintiff did not show up at Zip / MH's offices for weeks or months at a time. *Id.*, ¶12. While Plaintiff was on site at Zip / MH, no Zip / MH employee saw Mr. Shoshani mistreat Plaintiff or otherwise act unprofessionally toward her. *Id.*, ¶30.

Every Zip and MH employee was on their company's payroll and received tax forms, but Plaintiff was never placed on Zip or MH's payroll, and she never received a W-2 form from either company. SUMF, ¶¶ 1, 2, 5. Plaintiff never had a personnel file at Zip or MH, nor did she submit a W-4 withholding form to either company. *Id.* ¶¶ 3-4. Plaintiff never received paid sick leave, personal time off, or paid vacation time, even though Zip / MH has offered these benefits to all eligible employees since 2011. *Id.* ¶¶8, 10. Plaintiff told Mr. Shoshani that she was a volunteer and worked without a salary. *Id.* ¶ 19.

On May 16, 2013, Plaintiff and Mr. Shoshani executed a consulting agreement ("Consulting Agreement") solely to have Plaintiff achieve legal working status in the United States. SUMF ¶ 16. Plaintiff believed that she was not authorized to work in the United States until she executed the Consulting Agreement. *Id.*, ¶ 17. Plaintiff and Mr. Shoshani never contemplated that Plaintiff would be an employee or independent contractor for Zip or MH under the Consulting Agreement, or that Plaintiff would be paid under the Consulting Agreement. *Id.*, ¶ 25. Plaintiff stopped volunteering at Zip / MH a few months before the parties executed the Consulting

Agreement, and after the Agreement was executed, Plaintiff never worked at Zip / MH's offices. *Id*., ¶ 26.

The parties to the Consulting Agreement are MH and 1168839 Ontario Limited ("Ontario"), a company Plaintiff owned. SUMF, ¶ 20. In December 2004, Ontario was dissolved and had its certificate of incorporation cancelled for failing to comply with Canadian tax law. *Id.*, ¶ 22. At the time Plaintiff and Mr. Shoshani entered into the Consulting Agreement, Ontario was a dissolved company. *Id.*, ¶23.

Mr. Shoshani ended his relationship with Plaintiff in autumn 2014. SUMF ¶ 32. Before the relationship ended, Plaintiff stole thousands of dollars from Mr. Shoshani's safe and fabricated many stories about her personal life. *Id.* On February 10, 2015, Plaintiff sought an *ex parte* order of protection against Mr. Shoshani, alleging that on February 5, 2015, Mr. Shoshani threatened Plaintiff with a firearm. *Id.* ¶ 33. The case was dismissed after Mr. Shoshani presented evidence that he was that he was not in the United States on February 5, 2015. *Id.*

Plaintiff subsequently filed a complaint against Mr. Shoshani with the Federal Aviation Administration ("FAA"), alleging that Mr. Shoshani engaged in insurance fraud and knowingly flew unsafe aircraft. SUMF ¶ 35. The FAA found no credible information to support the complaint and found that Plaintiff's complaint stemmed from personal animus. *Id.*

Plaintiff also filed a complaint against Mr. Shoshani with the Florida Division of Consumer Services in an effort to have his gun license revoked. SUMF ¶ 36. The complaint was found to be meritless. *Id.* Plaintiff has made harassing phone calls to Mr. Shoshani's ex-wife, and sent defamatory statements to his ex-sister in law. *Id.* ¶ 37. Before filing this action, Plaintiff and her counsel spoke on the record to the New York Post about this lawsuit, which ran an article under the headline "You can't just escape". *Id.* ¶34.

Plaintiff's allegations have spurred negative media coverage that has damaged business prospects for Zip / MH and Mr. Shoshani. SUMF ¶ 39. Plaintiff's allegations have forced Mr. Shoshani, Zip, and MH to incur substantial legal expenses to respond to Plaintiff's allegations. *Id.* ¶38. Plaintiff's allegations have caused immeasurable harm to Mr. Shoshani's finances and his reputation, and have caused him severe emotional distress. *Id.* ¶40.

Omar Cabral, who had a relationship with Plaintiff in 1994, testifies that Plaintiff told him he was the father of Plaintiff's son, Khalil. SUMF ¶¶ 41-44. Mr. Cabral, who sent money to Plaintiff after hearing this, found out that Khalil was not his son, and Mr. Cabral's money was never returned. *Id.* ¶¶ 44-47. Dean Fex, who actually had a child with Plaintiff, testifies that Plaintiff failed to pay child support for her daughter, Sevannah, and offered Mr. Fex custody of the child in exchange for his home. *Id.* ¶¶ 49 – 53.

Dr. Charles Heller, a forensic psychologist who specializes in PTSD and performed a mental examination on Plaintiff, opined that she gave "insufficient effort to produce valid results" during her examination. SUMF ¶¶ 55- 58. Dr. Heller also opined that Plaintiff was "intentionally manifesting symptoms to corroborate her own narrative." *Id.* ¶ 59.

Plaintiff alleges that in December 2007, Mr. Shoshani "overpowered" and "forced Plaintiff to have sex with him" at a private club, but later declined to describe the same incident as forceful. SUMF ¶60. Plaintiff alleges that, by December 2007, Mr. Shoshani assaulted her every morning. When asked if that allegation was true, Plaintiff said no, then testified  that she did not know the answer. *Id.* ¶ 62. Plaintiff disputed the authenticity of at least ten documents at her deposition, claiming that the documents were either fabricated, doctored, or otherwise not drafted by her notwithstanding the fact that some of those documents were sent from her own email address. *Id.* ¶ 64.

## THE LEGAL STANDARDS GOVERNING THIS MOTION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of presenting the basis for its motion and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* If the moving party meets its burden, the nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir.1998). When determining whether summary judgment is appropriate, the Court must draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the Court should grant summary judgment against that party. *Celotex*, 477 U.S. at 322.

## ARGUMENT

I.     **Summary Judgment Should Be Entered On Plaintiff's Employment Claims (Counts I, IV, VII, XVII, and XVIII) Because Plaintiff Is Not A <u>Covered Employee Under the Relevant Employment Statutes</u>.**

   a)  **<u>The Law Governing Plaintiff's Employment Claims</u>**

      1)  **<u>Employee Status Is Required</u>**

Plaintiff's employment claims fall into two general areas: (1) sex discrimination claims under the New York State Human Rights Law and the New York City Human Rights Law; and

7

(2) unpaid minimum wage claims under the Fair Labor Standards Act and the New York Labor Law.[2] ECF No. 30 at 33, 36, 38, 46-50. A person seeking relief under any of these statutes must establish an employer-employee relationship. *McHenry v. Fox News Network*, 19 Civ. 11294 (PAE), 2020 WL 7480622, at *18 (S.D.N.Y. Dec. 18, 2020) (NYSHRL and NYCHRL); *Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 597 (E.D.N.Y. 2012) (FLSA and NYLL). The issue of whether a plaintiff is an employee is a question of law if the underlying facts are undisputed. *Saleem v. Corp. Transp. Grp. Ltd.*, 854 F.3d 131, 139 n.19 (2d Cir. 2017).

### 2)  <u>Employee Status Under the NYSHRL and the NYCHRL</u>

Under the NYSHRL and NYCHRL, New York Courts apply a two-part test to determine whether a plaintiff is an employee. *Wang v. Phoenix Satellite Television US, Inc*., 976 F. Supp. 2d 527, 535–36 (S.D.N.Y. 2013). First, the plaintiff must show that she was hired by the employer by "establishing that she received remuneration in some form for her work." *Id.* Remuneration can be established through proof of typical employee benefits such as a salary, sick pay, health insurance, vacation leave, a retirement pension, life insurance, death benefits, disability insurance, and medical benefits. *See York v. Ass'n of Bar of the City of New York*, 286 F.3d 122, 126 (2d Cir. 2002) . If a plaintiff fails to prove remuneration, the plaintiff has no claim under the NYSHRL and NYCHRL. *Wang*, 976 F. Supp. 2d at 535–36. If a plaintiff proves remuneration, the Court then considers thirteen factors to determine whether an employment relationship exists. *See U.S. v. City of New York*, 359 F.3d 83, 92 (2d Cir. 2004) (for thirteen factor test).

---

[2] While Plaintiff has not clarified the theory of sex discrimination she is pursuing under the NYSHRL and NYCHRL, Judge Batts found hostile work environment and quid pro quo harassment theories to be applicable in this case. *Id.* at 15-16.

### 3)   Employee Status Under the FLSA

When determining whether a plaintiff is an employee under the FLSA, Second Circuit courts apply an "economic reality test," which weighs: (1) the degree of control exercised by the employer over the workers; (2) the workers' opportunity for profit or loss and their investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business. *Meyer v. U.S. Tennis Ass'n*, 607 F. App'x. 121, 122 (2d Cir. 2015).

### 4)   Employee Status Under the NYLL

Under the NYLL, "courts consider factors similar to those used in the FLSA inquiry, although with a slightly different emphasis." *Saleem v. Corp. Transp. Grp., Ltd.*, 52 F. Supp. 3d 526, 536 (S.D.N.Y. 2014). The relevant inquiry looks at whether the employee: "(1) worked at his [or her] own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule." *Id.* The critical inquiry is the "degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Id.*

### b)   Plaintiff Is Not A Covered Employee Under the Relevant Employment Statutes

Undisputed evidence demonstrates that Plaintiff is not a covered employee under any of the statutes she invokes in her efforts to recover money from Mr. Shoshani. First, it is undisputed that Plaintiff was not on the payroll of Zip or MH. Melana Mallah, Zip's General Manager who oversees the human resources function at both Zip and MH, confirmed that Plaintiff never had a personnel file at either company. Naunton Decl. Ex. 1, ¶ 5.  Likewise, Plaintiff admitted at her deposition that she never received a paycheck from either company, and was never on the payroll

of either company. Naunton Decl. Ex. 2 (Roelcke Dep.), at 139:10–139:11; Naunton Decl. Ex. 1, ¶ 7. Plaintiff never submitted a W-4 tax withholding form to Zip or MH, nor did she ever receive a W-2 wage form from either company. Naunton Decl. Ex. 1, ¶ 6. Plaintiff's lack of employment tax forms and proof of paychecks lies in stark contrast to the testimony of those who were actually employed by Zip / MH. Naunton Decl. Ex. 3 (Moya Dep.), at 13:24–14:7, 17:9–17:10, 22:10–22:21; Naunton Decl. Ex. 4 (Friedberg Dep.), at 28:20–28:24, 29:18–29:23, 36:6–36:9; Naunton Decl. Ex. 2 (Roelcke Dep.), at 139:5–139:9. *See also Sellers v. The Royal Bank of Canada*, 12 Civ. 1577(KBF), 2014 WL 104682, at * 8 (S.D.N.Y. Jan. 8, 2014) (finding no employee status to a worker who was not on the payroll, never received a W-2, and did not have employment-related taxes withheld).

Moreover, Plaintiff was not given any employee benefits during her alleged five-plus years working at Zip and MH. Since at least 2011, Zip and MH have offered benefits such as sick leave, personal time off, and paid vacation time to all of its eligible employees. Naunton Decl. Ex. 1, ¶ 4. Plaintiff, however, never received any of these employee benefits, which is consistent with Plaintiff's failure to appear on Zip or MH's payroll. Naunton Decl. Ex. 1, ¶¶ 4–5. *See also McNally v. Yarnall*, 764 F. Supp. 838, 853 (S.D.N.Y. 1991) (finding no employee status where the plaintiff did not receive any fringe benefits); *Meyer*, 607 F. App'x at 123.

Plaintiff's behavior during the relevant time period also demonstrates that she was not an employee of Zip or MH.  Here, some background is helpful. As Mr. Shoshani testified, Plaintiff did not have a job while she was living in New York.  Naunton Decl. Ex. 5, ¶ 9. With ample free time on her hands, Plaintiff sometimes accompanied Mr. Shoshani to Zip / MH's offices, and volunteered to assist with administrative or other tasks. *Id.* ¶ 10  Because Plaintiff was Mr. Shoshani's girlfriend, he did not stop her. Naunton Decl. Ex. 8 (Shoshani Dep.), at 39:16–40:14.

Notwithstanding those facts, the undisputed record demonstrates that Plaintiff was never an employee of Zip or MH.  Plaintiff did not have a work schedule, did not have to "clock in" and "clock out" of work, and was free to come and go as she pleased. Naunton Decl. Ex. 5, ¶ 11. The record shows that Plaintiff was at Zip and/or MH only sporadically, as Mr. Shoshani's girlfriend, and often was not there for weeks or months at a time. Naunton Decl. Ex. 3 (Moya Dep.), at 27:24–28:4; Naunton Decl. Ex. 6 (Sundlof Dep.), at 76:6–76:20; Naunton Decl. Ex. 7 (Tzion Dep.), at 49:18–50:4. This was not the case for other Zip / MH employees, who had to take vacation days (for non-pilots) or swap tour shifts (for pilots) when they wanted to take personal time. Naunton Decl. Ex. 3 (Moya Dep.), at 29:2–29:4; Naunton Decl. Ex. 7 (Tzion Dep.), at 50:12–51:14. Indeed, at Zip, an employee could be fired if they had three unexcused absences. Naunton Decl. Ex. 3 (Moya Dep.), at 24:22–25:12. Plaintiff's own undisputed actions put the lie to her alleged status as an employee, "because setting one's own hours demonstrates a lack of control by the putative employer and initiative on behalf of the worker." *Franze v. Bimbo Bakeries, USA*, *Inc.*, 826 F. App'x 74, 77 (2d Cir. 2020) (citing *Saleem*, 854 F.3d at 146-48).

The record also demonstrates that Plaintiff was not an employee because there was a mutual recognition that Defendants would not pay Plaintiff. *See McNally,* 764 F. Supp. at 852. Mr. Shoshani testified multiple times that he rejected Plaintiff's request for a salary, informing her that he could "not afford her, and that [Plaintiff was] not properly documented to work in the U.S." Naunton Decl. Ex. 8 (Shoshani Dep.), at 28:16–21. Mr. Shoshani also testified that he never offered an employment position to Plaintiff. *Id.* at 28:3–5; 36:22–37:3. Plaintiff's own words corroborate Mr. Shoshani's testimony. For example, in a November 11, 2011 email, Plaintiff wrote to Mr. Shoshani: "I worked for you and had zero source of income." Naunton Decl. Ex. 9, at DEF-

0010214. And in a May 30, 2010 email, Plaintiff noted that she doesn't get a salary, but "what I get is shelter(living)." Naunton Decl. Ex. 10, at Plaintiff P0482.

Finally, Plaintiff's own sworn testimony demolishes her contention that she was an employee of Zip / MH since 2007. Plaintiff testified that the reason she signed a consulting agreement with MH in 2013 was "[t]o finally make my employment there legal." Naunton Decl. Ex. 2 (Roelcke Dep.), at 158:23–159:1. Plaintiff also testified that as early as 2008 she confronted Mr. Shoshani about "making [her employment] legal," demonstrating her awareness that she was not a legal employee. *Id.* at 159:4–20. The record demonstrates the parties proceeded under the mutual recognition that Plaintiff was not a paid employee.

In sum, the record establishes that Plaintiff was never an employee of Zip / MH, but rather a "companion that was out helping somebody she cared about." Naunton Decl. Ex. 6 (Sundlof Dep.), at 32:23–24.

**II.      Summary Judgment Should Be Entered On Plaintiff's Breach of Contract Claim (Count X) Because Plaintiff Has Not <u>Presented Evidence Establishing Formation of a Contract</u>.**

### a) <u>The Law Governing Plaintiff's Breach of Contract Claim</u>

To succeed on a claim for breach of contract under New York law, a plaintiff must demonstrate "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). For an agreement to exist, "there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004). If there is no mutual assent "*on all essential terms*, there is no contract."

12

*Nusbaum v. E-Lo Sportswear*, 17-CV-3646 (KBF), 2017 WL 5991787, at * 3 (S.D.N.Y. Dec. 1, 2017) (emphasis added).

### b) There Is No Evidence Establishing Formation of a Contract

Plaintiff's breach of contract claim alleges that Zip / MH breached two separate purported agreements. ECF No. 39 at 22; ECF No. 44 at 28. First, Plaintiff alleges that Zip and Mr. Shoshani breached a yearly, recurring oral agreement where Plaintiff was to be paid a salary of $150,000 (the "Oral Agreement"). *Id.*; ECF No. 30 at ¶¶ 21, 22. Plaintiff also alleges that MH violated the Consulting Agreement dated May 16, 2013. ECF No. 39 at 22; Naunton Decl. Ex. 11. Plaintiff's claim as to each alleged contract fails as a matter of law.

### 1) The Alleged Oral Agreement

With respect to the alleged Oral Agreement, there is no evidence showing the parties' mutual assent to form an employment contract. Plaintiff has not provided any direct proof showing that the parties agreed to the Oral Agreement, nor has she provided any circumstantial proof. There are no documents, communications, or other evidence even referring to the existence of the Oral Agreement, despite Plaintiff's claims that she worked under the Oral Agreement for more than five years. Instead, the record shows that Zip and Mr. Shoshani never assented to the Oral Agreement. Mr. Shoshani testified that he rejected Plaintiff's request to be a Zip employee, and never offered any employment position to Plaintiff. Naunton Decl. Ex. 8 (Shoshani Dep.), at 27:16–21; 37:4–7. A July 2007 email exchange between Mr. Shoshani and Plaintiff corroborates his testimony. Naunton Decl. Ex. 12. In that email, Plaintiff asked to be an employee at Zip and MH, with a suggested minimum salary between $120,000 and $150,000. *Id.* In response, Mr. Shoshani informed Plaintiff that he could not afford such a salary. *Id.* Moreover, despite Plaintiff's claims of working pursuant to the Oral Agreement since October 2007, in emails after that date,

Plaintiff consistently stated that she worked as a "volunteer", that she didn't "take salary" but "gets shelter", and that she "worked for [Mr. Shoshani] and had zero source of income." Naunton Decl. Exs. 9 and 10.

The facts of this case are strikingly similar to those in another case from this Court, *Beautiful Jewelers Private, Ltd. v. Tiffany & Co.*, No. 06 Civ.3085 (GBD), 2010 WL 2720007 (S.D.N.Y. June 28, 2010). In *Beautiful Jewelers*, an Indian jewelry retailer ("BJ's") sued a New York jewelry company ("Tiffany"), alleging that Tiffany breached an oral agreement which allowed BJ's "to be the exclusive distributor of Tiffany's jewelry for as long as Tiffany sold its products in India." *Id.* at *1-2. There was no written evidence of the oral agreement other than the affidavit of BJ's chief executive officer. *Id.* at *1-3. Judge Daniels, however, noted that draft agreements between the two companies "all specified an expiration date" to their agreement. *Id.* at *3. Despite the affidavit from BJ's CEO, the Court found that "no rational jury could find in favor of [BJ's]", because the evidence "directly contradicts [BJ's] contention that [it] had an oral agreement with [Tiffany] for a lifelong term." *Id.* at *3.

Similar to *Beautiful Jewelers*, Plaintiff has presented no evidence substantiating the alleged Oral Agreement's formation through mutual assent. Instead, the record evidence shows the opposite: that neither party agreed to be bound to the alleged Oral Agreement, and that Plaintiff acknowledged that she was working gratuitously.

## 2)  The Consulting Agreement

Plaintiff's breach of contract claim with regard to the so-called Consulting Agreement is just as fanciful. The parties to the Consulting Agreement are MH and Ontario, a company Plaintiff owned.[3] Naunton Decl. Ex. 11. Plaintiff testified under oath that Ontario was never dissolved, but

---

[3] The Consulting Agreement is governed by New York law. Naunton Decl. Ex. 11.

Canadian records reveal Plaintiff's testimony to be false. Naunton Decl. Ex. 2 (Roelcke Dep.), at 157:7–158:13. Canadian records show that Ontario was dissolved on December 27, 2004 for failing to comply with Canadian tax law. Naunton Decl. 13; Naunton Decl. Ex. 14, at 225, 230. Ontario, therefore, did not exist at the time the Consulting Agreement was executed. *Id.* A "nonexistent corporation does not have the legal capacity to contract." *Leber Assocs., LLC v. Entm't Grp. Fund, Inc.*, No. 00 Civ. 3759 LTS MHD, 2003 WL 21750211, at *9 (S.D.N.Y. July 29, 2003). "Thus, if a non-existent corporation purports to enter into a contract, that contract will be void and unenforceable." *Id.* (citations omitted).

Moreover, even if Ontario were able to enter into the Consulting Agreement, the record establishes that there was no mutual assent to be bound by the agreement's terms. As Mr. Shoshani's sworn deposition testimony made clear, the Consulting Agreement "was [merely] a tool to help [Plaintiff's] immigration status." Naunton Decl. Ex. 8 (Shoshani Dep.), at 65:5–7. When he executed the Consulting Agreement, Mr. Shoshani emphasized that he was not paying Plaintiff, writing "don't expect to be paid" in the email transmitting his executed copy of the document. Naunton Decl. Ex. 15. This is corroborated by Plaintiff's own sworn testimony that the purpose of the Consulting Agreement was to make her employment at Zip "legal." Naunton Decl. Ex. 2 (Roelcke Dep.), at 158:14–159:20. In her testimony, Plaintiff also rejected as inaccurate certain provisions of the Consulting Agreement. For example, Plaintiff testified that Part 1 of the

Consulting Agreement (stating that Plaintiff was hired for her expertise in aerospace engineering) was "false" and inapplicable to Defendants' businesses.[4] *Id.* at 159:21–160:6.

**III.     Summary Judgment Should Be Entered on Plaintiff's Quantum Meruit and Unjust Enrichment Claims (Counts XI and XII) Because Plaintiff Has Not <u>Presented Evidence Showing a Reasonable Expectation to Be Paid.</u>**

      **a)   The Law Governing Plaintiff's Quantum Meruit <u>and Unjust Enrichment Claims</u>**

Quantum meruit and unjust enrichment are equitable doctrines available when an express contract is unenforceable. *Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F. Supp. 2d 500, 503–04 (E.D.N.Y. 2009). Under New York law, quantum meruit and unjust enrichment claims may be analyzed as a single claim. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).

To recover in quantum meruit under New York law, a plaintiff must establish: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000) (citation and internal quotation marks omitted). With regard to the third element, the claimant's expectation of compensation must be reasonable given the circumstances. *Int'l Paper Co. v. Suwyn*, 978 F. Supp. 506, 513 (S.D.N.Y. 1997) (citations omitted).

---

[4] The terms of the Consulting Agreement provide that MH was to pay Ontario $650 per day. Naunton Decl. Ex. 11. The fact that a then-dissolved corporation was to be paid demonstrates that the parties did not intend to follow the Consulting Agreement's terms.

### b) <u>There Is No Evidence Plaintiff Had A Reasonable Expectation to be Paid</u>

Plaintiff's unjust enrichment and quantum meruit claims fail because Plaintiff has not provided sufficient evidence that she had a reasonable expectation of compensation. Indeed, the record shows: (1) Mr. Shoshani repeatedly warning Plaintiff that she would not be paid for any services she voluntarily provided; and (2) statements from Plaintiff acknowledging that she helped Mr. Shoshani gratuitously. In a July 2007 email, for example, Mr. Shoshani told Plaintiff that he could not afford her requested six figure salary. Naunton Decl. Ex. 12. Mr. Shoshani's testimony states the same. Naunton Decl. Ex. 8 (Shoshani Dep.), at 28:16–21. Mr. Shoshani also made it clear that he was not paying Plaintiff under the Consulting Agreement, writing "don't expect to be paid" in an email attaching the Agreement. Naunton Decl. Ex. 15.

Plaintiff has not provided any evidence showing that Mr. Shoshani stated otherwise. These facts place this case on similar footing to *Soumayah v. Minnelli*, 41 A.D.3d 390, 391-92 (1st Dep't 2007). In that case, the court found that the plaintiff's quantum meruit claim was "undercut" by the defendant's statements that she "could no longer afford to pay plaintiff his full salary, [and] that his pay was going to be halved[.]" *Id.* at 392. Given these statements, the court found "that plaintiff had no reasonable expectation of compensation for [his] services." *Id.* The same is true here.

Also, as noted above, Plaintiff consistently stated that she worked as a "volunteer", that she didn't "take salary" but "gets shelter", and that she "worked for [Mr. Shoshani] and had zero source of income." Naunton Decl. Exs. 9 and 10. These statements demonstrate Plaintiff's recognition that any work she performed was gratuitous. Plaintiff has not produced any documents or communications stating otherwise. Plaintiff's admission that she voluntarily provided services to Mr. Shoshani out of love and without expectation of any compensation warrants granting

summary judgment against Plaintiff on her quasi-contract claims. *See Estate of Goth v. Tremble*, 59 A.D.3d 839, 842 (3d Dep't 2009).

IV.   **Summary Judgment Should Be Entered on Plaintiff's Assault Claims (Counts XIV, XV, and XVI) Because of the Inconsistent and Incomplete <u>Nature of Her Testimony</u>.**

Plaintiff's complaint is littered with allegations regarding Mr. Shoshani's personal behavior. *See generally*, ECF No. 30 at 3-32. Plaintiff alleges that Mr. Shoshani raped her on a regular basis and made Plaintiff his "sex slave." ECF No. 30 at ¶¶ 71, 108, 111, 162, 179, 203, 223. Plaintiff alleges that, despite living together, Mr. Shoshani failed to support her by not giving her enough money for food or other basic necessities. *Id.* at ¶¶ 60, 102, 129. According to Plaintiff, Mr. Shoshani's physical and emotional abuse did not stop even when she was at the Zip / MH workplace. Plaintiff alleges that Mr. Shoshani humiliated her on a daily basis while she allegedly worked at Zip. *Id.* at ¶ 114. Such humiliation allegedly occurred "for all of the employees to hear." *Id. See also id.* at ¶¶ 180-181. Plaintiff also alleges that Mr. Shoshani would randomly assault Plaintiff by pinching her, crushing her ribs, and brandishing a gun. *Id.* at ¶¶ 211, 221, 232.

Plaintiff does not specify which of these countless allegations form the basis of her claims for rape / sexual abuse, intentional infliction of emotional distress, or violation of New York City's Gender Motivated Violence Protection Act (the "Assault Claims"). Nonetheless, it is clear the Court should grant summary judgment as to each of these claims. The **<u>only</u>** record evidence in support of these claims is the Plaintiff's own uncorroborated testimony. For each of these claims – including Plaintiff's claim that Mr. Shoshani raped her on a regular basis over a seven year period, and regularly abused her in the workplace – there is no other corroborating evidence. The record contains no testimony from eyewitnesses or other outcry witnesses, and no physical or documentary evidence to corroborate Plaintiff's testimony. Suffice it to say, Plaintiff's testimony

is deeply problematic, and standing alone cannot save her Assault Claims from summary judgment.

As noted by Mr. Shoshani, Plaintiff "has a wild imagination, and a long-distance relationship with reality and truth[.]" Naunton Decl. Ex. 8 (Shoshani Dep.), at 132:8–9. Plaintiff's long history of lies and misrepresentations are noted in the sworn affirmations of third parties Dean Fex and Omar Cabral. Mr. Cabral describes Plaintiff as nothing more than a "con artist," who lied and told Mr. Cabral that she was pregnant with his child during their one year relationship. Naunton Decl. Ex. 16 at ¶¶ 12–14. Plaintiff told Mr. Cabral a series of lies in an effort to prey on his trusting nature and take his money. *Id.* ¶¶ 9, 11, 15. Mr. Cabral was so deeply traumatized by the Plaintiff's lies that 24 years after his last contact with Plaintiff, he reached out to defense counsel from his home in South America to share his testimony.

Dean Fex, Plaintiff's ex-boyfriend, tells a similar story. Mr. Fex had a child with Plaintiff, but she later removed Mr. Fex's name from the child's long form birth certificate. Naunton Decl. Ex. 17. After their relationship ended, Plaintiff forged a check and stole money from Mr. Fex's bank account. *Id.* ¶ 7. Mr. Fex recounts a slew of lies Plaintiff made up, including: (1) that she was an aerospace engineer; (2) that she was born in Germany; (3) that she was a prisoner in Mexico; and (4) that she received a $60,000 salary while working at Zip, which blatantly contradicts many of the Complaint's allegations. Mr. Fex also states that Plaintiff frequently traveled across the country at the same time Plaintiff alleges she was held by Mr. Shoshani as a "sex slave." *Id.* ¶ 10.

Dr. Charles Heller, a forensic psychologist who specializes in Post-Traumatic Stress Disorder, performed a comprehensive mental examination in response to Plaintiff's claims of psychological trauma. Naunton Decl. Ex. 18. Given Plaintiff's history of deceit and fabrication, Dr. Heller's conclusions come as no surprise. After having Plaintiff undergo a test "specifically

designed to identify" malingering, Dr. Heller found that Plaintiff gave  during her mental examination, and found that Plaintiff's self-reported psychological trauma is "of questionable reliability". *Id.* Dr. Heller also opined that

*Id.* at 22 (emphasis added).

Generally, a Court "may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York,* 426 F.3d 549, 551 (2d Cir. 2005). Nevertheless, the Second Circuit has recognized that in "rare circumstances," summary judgment may be granted when: (1) there is nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony; and (2) the court, even drawing all inferences in favor of the plaintiff, finds that no reasonable jury could believe the plaintiff's testimony. *Id.* at 555. Plaintiff's slew of inconsistent and unsupported statements make this case such a rare circumstance in which summary judgment is appropriate.

Plaintiff's pathological lying calls into question the key allegations supporting her Assault Claims. Mr. Shoshani testified that he never raped Plaintiff, and that they "never had sex that was not consensual." Naunton Decl. Ex. 8 (Shoshani Dep.), at 129:17–18. *See also id.* at 131:3–133:10, 133:22–134:6. Mr. Shoshani also testified that he never humiliated Plaintiff in front of Zip employees. *Id.* at 134:7–135:14. Mr. Shoshani's testimony is corroborated by every other Zip / MH employee who testified at deposition. Naunton Decl. Ex. 19 (Maripen Dep.), at 34:18–21; Naunton Decl. Ex. 6 (Sundlof Dep.), at 50:1–19; Naunton Decl. Ex. 3 (Moya Dep.), at 26:3–11; Naunton Decl. Ex. 4 (Friedberg Dep.), at 36:4–6, 38:24–40:3. Karen Jackson, Plaintiff's friend, also testified that she never saw Mr. Shoshani mistreat Plaintiff in any way. Naunton Decl. Ex. 20 (Jackson Dep.), at 62:1–9. Mr. Fex testifies that between 2007 and 2014, Plaintiff traveled

frequently with their daughter, contradicting Plaintiff's allegations that she was a "sex slave" and her testimony that she was raped daily. Naunton Decl. Ex. 2 (Roelcke Dep.), at 269:1–16.[5]

Beyond her own testimony, Plaintiff has not produced **any** police reports or other official complaints substantiating any of her sexual assault allegations. Furthermore, Plaintiff has not provided any witnesses who have direct knowledge of Mr. Shoshani's alleged inappropriate behavior.

Plaintiff also offered extensive sworn testimony that is inconsistent with her own allegations. For example, when asked about the nature of her alleged injuries, Plaintiff's interrogatories state that Mr. Shoshani "dislocated Plaintiff's left shoulder." Naunton Decl. Ex. 21. When asked about this injury at her deposition, Plaintiff insisted that Mr. Shoshani dislocated her shoulder, and that she drove from Hypoluxo, Florida to Sarasota, Florida with the dislocation. Naunton Decl. Ex. 2 (Roelcke Dep.), at 221:12–25, 225:23–226:4. Plaintiff was then shown a doctor's invoice from a clinic she visited around the time of the incident, which revealed that Plaintiff never suffered a dislocated shoulder. Naunton Decl. Ex. 22; Naunton Decl. Ex. 2 (Roelcke Dep.), at 227:6–230:18. Plaintiff's sworn interrogatory response proved to be nothing more than an exaggeration.

Another example is from Plaintiff's allegedly dramatic escape from Mr. Shoshani's apartment in February 2012. ECF No. 30 at ¶¶ 168–173. When asked about her alleged escape,

---

[5] Even Plaintiff's complaint and testimony states that she left the New York City area between 2007 and 2014. ECF No. 30 at ¶¶ 120, 174; Naunton Decl. Ex. 2 (Roelcke Dep.), at 351:10–351:17.

Plaintiff testified that the timeline in the Complaint was incorrect, and that the allegations omitted a trip to Toronto to pick up her daughter. Naunton Decl. Ex. 2 (Roelcke Dep.), at 328:11–329:12.

Similarly, when questioned about Mr. Shoshani's alleged daily assaults, Plaintiff's testimony contradicted her the allegations in her Complaint. The Complaint alleges that in 2014 Mr. Shoshani "overpowered" her and "forced [her] to have sex with him" after an evening at a private club. ECF No. 30, ¶¶40-42. But at her deposition, Plaintiff testified that she wouldn't describe the experience as forceful. Naunton Decl. Ex. 2 (Roelcke Dep.), at 314:3–316:8. When asked again whether Mr. Shoshani assaulted her that night, Plaintiff testified that she "does not know the answer" to the question. Naunton Decl. Ex. 2 (Roelcke Dep.), at 317:10–320:1.

In another instance, the Complaint alleges that, by December 2007, Mr. Shoshani assaulted her every morning. ECF No. 30, ¶ 43. When asked if that allegation was true, Plaintiff said "No, because he had me convinced it was a relationship." Naunton Decl. Ex. 2 (Roelcke Dep.), at 320:14–321:18. Plaintiff then testified that she did not "know how to answer" to the question. *Id.*

Plaintiff also disputed the authenticity of at least ten documents at her deposition, claiming that the documents were either fabricated, doctored, or otherwise not drafted by her notwithstanding the fact that some of the documents were sent from her own email address (Naunton Decl. Ex. 2 (Roelcke Dep.), 352:2–353:11), or dealt with basic information such as Plaintiff's birthdate (*Id.* at 19:3–22:2) or what school Plaintiff attended (*Id.*, 31:9–36:16). *See generally* SUMF ¶64; Naunton Decl. Ex. 18, at 24-28.

In light of Plaintiff's lies, inconsistencies, and misstatements, no reasonable person could believe her testimony, even if all of her statements were taken to be true. Plaintiff's own sworn statements are not only contradicted by documentary evidence, but also by her other sworn statements. Plaintiff's profound lack of credibility moves her claims beyond the realm of plausible,

and for that reason the Court should grant summary judgment against Plaintiff on her Assault Claims.

## CONCLUSION

For all of the foregoing reasons, the Court should grant summary judgment to Defendants and Plaintiff's Complaint should be dismissed with prejudice as to all Defendants.

Dated: March 5, 2021
New York, New York

Respectfully submitted,


/s/ Shawn P. Naunton
Shawn P. Naunton
Devon W. Galloway
Nell Z. Peyser
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, New York 10022
Tel: (212) 704-9600
Fax: (202) 822-8106
snaunton@zuckerman.com
dgalloway@zuckerman.com
npeyser@zuckerman.com

*Counsel for Defendants*
*Zip Aviation, LLC, Manhattan Helicopters LLC,*
*and Itai Shoshani*

## <u>CERTIFICATION OF COMPLIANCE</u>

The Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment complies with the word count limitation because it contains 6,988 words, excluding the cover page, certification of compliance, table of contents and table of authorities, pursuant to Rule II(D) of the Individual Practices of Judge John G. Koeltl.

Dated: March 5, 2021

*/s/ Shawn P. Naunton*
Shawn P. Naunton
